Bedno and others, Copartners, d/b/a King Optical Company, Appellants, v. Fast and others (Wisconsin Board of Examiners in Optometry), Respondents.

*February 3—March 3, 1959.*

472

For the appellants there were briefs by *Goldberg, Previant & Cooper*, attorneys, and *A. G. Goldberg* and *Saul Cooper* of counsel, all of Milwaukee, and oral argument by *Saul Cooper*.

For the respondents there was a brief by the *Attorney General* and *Warren H. Resh* and *John H. Bowers*, assistant attorneys general, and *William J. McCauley*, district attorney of Milwaukee county, and *Hugh R. O'Connell*, special assistant district attorney, and oral argument by *Mr. Resh* and *Mr. O'Connell*.

MARTIN, C. J.  The statutes involved are:

Sec. 153.10  "It shall be unlawful for any person to advertise either directly or indirectly by any means whatsoever any definite or indefinite price or credit terms on lenses, frames, complete glasses or any optometric services; to advertise in any manner that will tend to mislead or deceive the public; to solicit optometric patronage by advertising that he or some other person or group of persons possess superior qualifications or are best trained to perform the service; or to render any optometric service pursuant to such advertising."

Sec. 153.11  "Any person not lawfully authorized to practice optometry, who shall practice optometry or shall hold himself out as a practitioner thereof, or who shall

impersonate another practitioner or who shall violate any provisions of this chapter, or any rule or regulation made under authority thereof, shall be punished for the first offense by a fine not less than $50 nor more than $200, or by imprisonment for not more than three months, or both. And for a subsequent offense by a fine not less than $200 nor more than $500, or by imprisonment for not less than three nor more than six months, or both such fine and imprisonment."

None of the facts are in dispute, it being stipulated by the parties that the allegations contained in the complaint and answer, together with the exhibits attached thereto, constitute all the evidence in the case.

Plaintiffs are manufacturers and merchants of optical goods. They engage in the practice of optical dispensing, which consists of taking facial measurements, processing, fitting and adjusting mountings, frames, and lenses in the filling of prescriptions. They duplicate, replace, and reproduce such devices without prescription where no optometrical service is required. Plaintiffs own and operate a factory at Chicago for the manufacturing and processing of optical goods, as well as branches in numerous cities of the United States and Canada for the dispensing of such goods. The orders taken from customers at these branches, including the Milwaukee office, are sent to the Chicago factory to be filled according to the prescriptions. The eyeglasses or lenses are returned to the branch office where the frames are fitted to the customer's face.

All advertising contracts are made in Chicago and advertisements are placed in newspapers from the Chicago office. All accounting and banking activities incidental to the operation of the branch offices are carried on in Chicago. Annual sales of the business, between the Chicago office and the various branches, exceed two and one-half million dollars.

A one-price policy is maintained by the plaintiffs. Single-vision eyeglasses are $9.98; bifocal glasses are $4.98 additional. These prices include any correction, size, style, shape, or color of lenses or frames.

On opening their branch in Milwaukee on September 16, 1957, plaintiffs placed advertisements in the local newspapers containing statements such as, "All single-vision glasses at one low price including frames and lenses. Bifocals, if desired, at small additional charge." They have also published and circulated matter which advertises that glasses may be obtained for $9.98 complete with frames and lenses. There is no allegation in the pleadings that any of the statements contained in said advertisements are false, misleading, fraudulent, deceiving, or for the purpose of causing misunderstanding. It is admitted that such statements are full, fair, complete, and truthful, and all articles so advertised are actually of the type, kind, quality, and description as set forth in the advertisements.

Three questions are presented on appeal, the first of which is:

Are secs. 153.10 and 153.11, Stats., which prohibit the advertising of prices of complete glasses, applicable to plaintiffs, who do not practice optometry, or to their price advertising?

As to the purposes of ch. 153, Stats., the legislature declared in sec. 153.12, Stats.:

"This chapter is passed in the interests of public health, safety, and welfare and its provisions shall be liberally construed to carry out its objects and purposes."

Sec. 153.10, Stats., must therefore be read and interpreted with those purposes in mind.

The prohibition of price advertising of glasses is directed to "any person." Plaintiffs argue that ch. 153, Stats., is entitled "Optometry" and that analysis of the chapter as

a whole, as well as its legislative history, indicates that sec. 153.10, Stats., is intended to be limited in its application to persons practicing optometry. We cannot agree. As observed by the learned trial court, the words "any person" are clear and unambiguous and there is no room for construction. See Callaghan's Wis. Dig., Statutes, p. 618, sec. 174.

The fact that the prohibition applies to any price advertising on lenses, frames, complete glasses *"or any optometric services"* does not result in the modification of the language preceding the conjunction "or." An optician, while not required by the law to be licensed, dispenses lenses, frames, and complete glasses.

Considered in the light of the purpose of the statute, we can only conclude that sec. 153.10, Stats., applies to opticians as well as optometrists. The optometrist is one who measures defects of the eye and applies the principles of optics to prescribe corrections in vision. The optician's business is that of grinding lenses according to the prescription and fitting the completed glasses to the face of the customer. It can hardly be argued that the regulation of optometry—to insure that persons' eyes are properly tested and their individual needs properly prescribed for—is not in the interest of public health. But to permit such a prescription to be translated into eyeglasses which are the product of poor material and craftsmanship by opticians interested in underselling their competitors, is to defeat the purpose of the statute. If the public is not protected from unscrupulous practices by both optometrist and optician, it is not protected at all.

The legislative history of sec. 153.10, Stats. (created by ch. 273, Laws of 1943, introduced as Bill No. 390, A.), shows that it was drafted by an attorney for the department of agriculture and presented by a special committee representing the state and the optometric association. It would be entirely unreasonable to presume that the members of

such a committee would sponsor a bill which would have the effect of prohibiting price advertising of glasses by optometrists but not by opticians.

Retail stores which are permitted to sell eyeglasses of a certain type incidental to their other business are prohibited by sec. 153.02, Stats., from advertising the same, except by price marking on the glasses. Is the purpose of the chapter served by prohibiting advertising by optometrists and dime stores, for instance, but not by opticians?

We must hold that the statute means just what it says and applies to plaintiffs as "persons" engaging in advertising relating to the prices of "lenses, frames, complete glasses."

Plaintiffs argue that the advertising in question is full, fair, complete, and truthful and that sec. 153.10, Stats., is intended to prohibit only fraudulent and misleading advertising, citing *Ritholz v. Johnson* (1945), 246 Wis. 442, 17 N. W. (2d) 590. In that case the evidence showed that plaintiffs' advertising operated to defraud the public, and it was held that the statute applied.

The language of sec. 153.10, Stats., in no way indicates that proof of fraud is necessary to spell out an offense under its price-advertising prohibition. The practice which the statute is intended to protect the public against is that of filling a prescription to meet the price rather than the needs of the patient. To permit price advertising on the part of those who deal with the human eye, even truthful advertising, is to leave the door open for the unscrupulous practitioner to lure and to defraud unsuspecting members of the public. In the *Johnson Case, supra,* this court relied heavily upon *Semler v. Oregon State Board of Dental Examiners* (1934), 148 Or. 50, 34 Pac. (2d) 311, 294 U. S. 608, 55 Sup. Ct. 570, 79 L. Ed. 1086, where the court stated that the question was whether the kind of advertising prohibited afforded the unscrupulous practitioner a means of perpetrating fraud and deception upon his patients. It

was there recognized that although there is nothing harmful in itself in merely advertising prices, there could be no doubt that unethical practitioners do resort to price-advertising methods to lure the credulous to their offices for the purpose of fleecing them.

The second question is:

If secs. 153.10 and 153.11, Stats., are applicable to plaintiffs' activities, are they constitutional?

Although there are some cases to the contrary, as stated in *Ritholz v. Commonwealth* (1945), 184 Va. 339, 368, 35 S. E. (2d) 210, 223:

"The better-reasoned cases hold that restrictions and regulations of the sale of eyeglasses are measures directed to the prevention of substantial harm to the public health and are within the exercise of the police power of the state."

In discussing the work of the optician in the production of glasses, the court in *Springfield v. Hurst* (1944), 144 Ohio St. 49, 56, 56 N. E. (2d) 185, 188, reached the same conclusion as the Virginia court, saying:

"Quality of material and skill in workmanship are prime essentials in producing the finished lenses. Poor quality and poor grinding will naturally result from the desire to sell spectacles in quantity at a low advertised price, with the purpose of underselling the optometrist and other opticians who do not indulge in such advertising. Poor and improperly ground lenses will impair the eyesight of the person to whom they are sold as properly fitted. Thus, legislation prohibiting such bait advertising has a real and substantial relationship to the public health whatever vendor employs the injurious method. The result of forbidding the professional practitioner to resort to such advertising and permitting the optician (or even the retail vendor) to indulge in the harmful practice does not eradicate the evil. The whole field must be covered if protection is to be afforded the public.

"Therefore, an ordinance which prohibits advertising the price of lenses or complete eyeglasses is a reasonable and valid exercise of the police power."

Plaintiffs' argument that they are merely merchants has no merit. We cannot see that eyeglasses are any more merchandise than dentures. Both are prepared according to the needs of the individual. "Furnishing glasses as much affects the public health as does furnishing dentures," this court said in *Ritholz v. Johnson, supra,* page 453. In fact, it seems to us that a person's health may be more gravely endangered by wearing improper glasses than by wearing improper dentures.

Articles such as clothing or shoes are merchandise, purchased by the consumer for comfort and warmth. Eyeglasses are worn for correctional purposes. The customer himself knows whether a suit or a pair of shoes fit him and will serve the purposes for which he intends them; and if they do not, he suffers no harm. But he must rely on the word of the optician or optometrist that the glasses sold to him contain the proper correction for his vision; and if the correction is wrong he may very well sustain lasting injury to his eyes. This is clearly a matter of public health.

The last question is:

Has congress pre-empted the field of interstate advertising in the optical industry so as to deprive the state of jurisdiction to regulate in this field?

The rule has been stated in *Metropolitan Finance Corp. v. Matthews* (1953), 265 Wis. 275, 278, 61 N. W. (2d) 502, as follows:

"If plaintiff's business, although in interstate commerce, has incidents and requires activities within the state intimately related to local welfare, then those incidents and activities are subject to state regulation under the police power, unless congress has, by appropriate legislation, pre-empted the field with reference thereto."

Plaintiffs base their argument on the provisions contained in 15 USCA, p. 169, sec. 52, which they contend is a

comprehensive regulatory plan controlling price advertising in interstate commerce. A reading of the statute will show that it prohibits only *false* advertising as an unfair or deceptive act in commerce. Congress has not seen fit to include within the scope of federal legislation the dissemination of truthful advertising. Thus, the Federal Act does not cover the subject matter of sec. 153.10, Stats., and does not by pre-emption preclude the state from so exercising its police power. As stated in *Kelly v. Washington* (1937), 302 U. S. 1, 10, 58 Sup. Ct. 87, 82 L. Ed. 3:

"There is no constitutional rule which compels congress to occupy the whole field. Congress may circumscribe its regulation and occupy only a limited field. When it does so, state regulation outside that limited field and otherwise admissible is not forbidden or displaced. The principle is thoroughly established that the exercise by the state of its police power, which would be valid if not superseded by federal action, is superseded only where the repugnance or conflict is so 'direct and positive' that the two acts cannot 'be reconciled or consistently stand together.' "

All of the authorities relied upon by plaintiffs deal with *false* representations in advertising relating to optical goods. None of them involve truthful advertising of prescription eyeglasses. Since the prohibition of such truthful advertising is a proper exercise of the state's police power, as pointed out above, and the federal government has clearly limited its control to the field of false advertising, sec. 153.10, Stats., is constitutional. There is nothing in the statute which is repugnant to or incompatible with the Federal Act.

Our opinion in this case would be incomplete without a word of appreciation for the exhaustive decision prepared by the trial court. The thorough study and consideration of the questions which it put into the decision have been of substantial assistance to this court on appeal.

*By the Court.*—Judgment affirmed.