KELLEY et al., Respondents

v.

DULING ENTERPRISES, INC. et al., Appellants

(172 N.W.2d 727)

(File No. 10561. Opinion filed December 8, 1969)

Rehearing denied January 12, 1970

430

**Mead Bailey,** Sioux Falls, for defendants and appellants; **T. M. Whicher,** Sioux City, Iowa, **Bangs, McCullen, Butler & Foye,** Rapid City, of counsel.

**Alan L. Austin**, Watertown, for plaintiffs and respondents.

BURNS, Circuit Judge.

The plaintiffs, constituting the South Dakota Board of Examiners in Optometry, brought this action seeking by the first cause of action alleged in the complaint to enjoin defendants from conduct allegedly in violation of SDC 1960 Supp. 54.0609 entitled "Ophthalmic appliances: unlawful advertising; exceptions". Compare SDCL 1967, 34-15-3, the body of which is the same but which is entitled "Fraudulent advertising or sale of spectacles as misdemeanor—Penalty."

By the second cause of action alleged the Board also seeks injunctive relief against the defendants to restrain them from "capping and steering" of persons to certain optometrists under alleged arrangements and agreements, from controlling and directing the practice of optometry and from engaging in the practice of optometry in South Dakota.

By statute the practice of optometry is declared to be a profession. It is defined by statute "as examination of the human eye and its appendages, and the employment of any means for the measurement of the powers of vision, or any visual, muscular, neurological, interpretive, or anatomical anomalies of the visual processes, and the prescribing or employment of lenses, prisms, frames, mountings, visual training procedure, and any other means or method for the correction, remedy, or relief of any insufficiencies or abnormal conditions of the visual processes of the human eye and its appendages except by the use of drugs

or surgery, and an optometrist is one who practices optometry under the provisions of this chapter." SDC 1960 Supp. 27.0701; SDCL 1967, 36-7-1.

The defendants, Duling Enterprises, Inc. and Duling Optical Co. of South Dakota and the other defendants-appellants are not optometrists. They are engaged in the optical business and are known as opticians. An optician does not have professional status. An optician is one who grinds spectacle lenses to prescription and dispenses spectacles. Webster's Third New International Dictionary. There is no statutory definition of optician and unlike the optometrist he is given no professional status by statute.

"Unprofessional conduct" by an optometrist is defined by statute. SDCL 1967, 36-7-25. It is made unprofessional for an optometrist to seek patronage by any means of advertising except by professional card in the form prescribed by statute and the Board. SDCL 1967, 36-7-19. The exercise of such power of regulation of optometrists has been held by our Court to be a valid exercise of the police power. Norwood v. Parenteau et al., 75 S.D. 303, 63 N.W.2d 807. But such statutes and regulations do not apply to opticians.

Although SDC 1960 Supp. 54.0609 relates to spectacles, eyeglasses, lenses and ophthalmic appliances the statute applies to all persons. As has been pointed out above the caption of this section is "Ophthalmic appliances: unlawful advertising; exceptions." This statute is incorporated in the compiled laws of 1967 as follows:

"34-15-3. Fraudulent advertising or sale of spectacles as misdemeanor—Penalty.—It shall be unlawful for any person, firm or corporation to employ house to house canvassing, price or bait advertising, or advertising in which untruthful or misleading statements are made to entice the public into buying · spectacles, eyeglasses, lenses, frames or other ophthalmic appliances, eye examinations or visual services. Whoever shall violate

any of the provisions of this section shall be guilty of a misdemeanor and upon conviction shall be punished by a fine of not exceeding one hundred dollars or by imprisonment in the county jail not exceeding thirty days, or by both such fine and imprisonment."

■ This penal statute does not prohibit all advertising of the products and services designated. It makes it unlawful to employ advertising in which untruthful or misleading statements are made to entice the public into buying. It prohibits bait advertising to entice the public into buying. It makes it a crime to employ price advertising to entice the public into buying.

■ As used in criminal statutes the word "entice" is not a word referring to approved conduct. It may mean seduce. It is synonymous to lure, trap or snare. To entice as used in penal statutes may mean to inveigle, decoy, tempt, delude, to persuade against one's will or better judgment, or to draw into a situation by ruse or wiles. See Words and Phrases, Per.Ed. Vol. 14A and Webster's Third New International Dictionary.

■ The word "bait" may be used to mean "a lure * * * to attract fish." But in a penal statute "bait" means "an enticement that is marked by trickery or duplicity." Webster's Third New International Dictionary.

On behalf of the Board it is contended that price advertising and bait advertising are the same. Standing alone the term "price advertising" carries no connotation of enticement by trickery or duplicity. But when coupled with the words "to entice", there is little distinction between the terms "price advertising to entice" and "bait advertising to entice."

■ In construing a particular word or term in a statute reference will be had to the meaning of the words with which it is associated. The rule of ejusdem generis applies to the construction of statutes. State v. Fairbanks, 65 S.D. 272, 273 N.W. 188, 111 A.L.R. 759; State ex rel. Gammons v. Sorlie, 56 N.D. 650, 219 N.W. 105.

■ As used in this criminal statute the terms "advertising in which untruthful or misleading statements are made to entice", "price advertising to entice" and "bait advertising to entice" are of the same genre. The compiler and publisher of the Compiled Laws of 1967 in using the caption "Fraudulent advertising or sale of spectacles as misdemeanor—Penalty" over this section has quite accurately indicated the contents and purpose of the statute.

■ As so construed we find no constitutional defect in this penal statute. The numerous cases cited by respondents mostly relate to statutes and regulations prohibiting all advertising by optometrists and opticians, thus placing opticians under the same restrictions as the professions and to that extent giving them some status as members of a profession. Such statutes are sustained as a proper exercise of the police power of the state to protect the public health and safety and promote the general welfare. They rest upon the reasoning that the grinding of lenses to prescription, or even the placing of ground lenses in frames and the dispensing of spectacles and eyeglasses may be determined by legislative bodies to have relation to the health, safety and welfare of the public. See Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563; New Mexico Board of Examiners in Optometry v. Roberts, 70 N.M. 90, 370 P.2d 811; Annot., as to Validity of Acts Prohibiting Price Advertising, 89 A.L.R.2d at page 935 and cases cited; Bedno v. Fast, 6 Wis.2d 471, 95 N.W.2d 396.

It is obvious that if statutes in effect elevating opticians to professional status and prohibiting them from soliciting patronage by any form of advertising except for use of a prescribed form of professional card are a valid exercise of the police powers of the state, then a criminal statute such as SDCL 1967, 34-15-3 making it unlawful to employ price or bait advertising to entice or untruthful or misleading statements to entice the public to buy appliances and services having relation to the public health is constitutional.

Finding of Fact 13 made by the trial court is as follows:

"(13) That the newspaper, television, radio and telephone directory advertisements use various forms of price or bait advertising such as the following phrases, included in or incorporated in said advertisements, to-wit:

(a) 'Quality prescription eye glasses'

(b) 'High quality, low-cost eye glasses'

(c) 'Save money safely'

(d) 'Home of quality low cost eye glasses'

(e) 'Don't be satisfied with less than the finest quality prescription eye glasses'

(f) 'State law prohibits advertising price but quality guaranteed prescription eye glasses are available at Duling Optical, where you save money safely'

(g) 'To save waiting, call or write for an appointment'

(h) 'You may write or call for an appointment but it isn't necessary'

(i) 'No appointment necessary'

(j) 'Smart Savings'

(k) 'Quality service, why pay more'

(l) 'State law prohibits advertising price but you'll save money safely at Duling'

(m) 'It's fashionable to be thrifty'

(n) 'Go modern and save on prescription eye glasses'

(o) 'Its smart to save, even smarter to save safely'

(p) 'Be a saver and be a good looker'

(q) 'Hoot mon and you save money too'

(r) 'Style-plus savings'

(s) 'Inquire about "our breakage twelve month guarantee"'

(t) 'Duling Optical has that winning combination of high quality materials and workmanship, and fast efficient service, yet Duling is able to maintain a reasonable price for prescription eye glasses'

(u) 'Why pay more, why settle for less?'

(v) 'For your next pair of prescription eye glasses go to the Duling Optical Company'

(w) 'You save money because prescription eye glasses cost less at Duling Optical'

(x) 'You could pay too much unless you go to Duling Optical'"

Compared to what the public is accustomed to by way of puffing advertisements to attract business, the terms used in the advertisements by defendants descriptive of quality of service and price savings are relatively restrained and innocuous. While such terms may attract they are not enticing in the sense of persuading one against his will or better judgment to buy, nor are they "bait" in the sense of an enticement that is marked by trickery or duplicity.

It is true that the trial court found "That all such advertising was done for the purpose of enticing the public into buying eye glasses, lenses, frames, ophthalmic appliances or visual services and said price and bait advertising was designed to cause prospective customers to believe that full and complete visual services could be obtained at Duling Optical stores." The evidence shows the large scale scope of the optical sales made and services performed in South Dakota by the defendants from

several stores in the more populous centers. Yet the record is entirely devoid of any complaint by a customer as to such sales and services. No customer or other person has said that he was baited or enticed or lured or tricked into buying a product or service from the defendants nor that he was persuaded against his will or better judgment to buy an article or to employ services which were unsatisfactory or not as represented.

■ ■ If the word "bait" as used in the court's finding refers only to a means to attract and if the word "entice" in the finding means "attract" then there is evidence to sustain such finding. But if the word "bait" means "an enticement that is marked by trickery or duplicity" and the word "entice" means to decoy, delude, or to persuade against one's will or better judgment, or to draw into a situation by ruse or wiles, then the evidence does not support the court's finding of fact. If this criminal statute is not reasonably construed to mean what we have said it means, but can also be construed to mean "attract" in the harmless sense of drawing pleasing attention and liking, then the penal statute SDCL 1967, 34-15-3 is void for vagueness and uncertainty. " 'A statute that either forbids or requires the doing of an act in terms so vague that men of common intelligence must guess as to its meaning and differ as to its application lacks the first essential of due process of law.' " State v. Dove, 75 S.D. 460, 67 N.W.2d 917; State v. Elliston, Iowa, 159 N.W.2d 503; Bartron v. Codington County, 68 S.D. 309, 2 N.W.2d 337, 140 A.L.R. 550.

■ As indicated the trial court also found that "said price and bait advertising was designed to cause prospective customers to believe that full and complete visual services could be obtained at Duling Optical stores." This has reference to the use of the words "prescription eye glasses" in the advertisements. The evidence does show that there were prospective patrons who came to the stores or made inquires on the assumption that Duling Optical not only ground lenses and sold spectacles fitted with lenses but also rendered services as an optometrist by examining eyes and prescribing corrective lenses. But persons passing an optician's store and seeing spectacles in the show

438

window or reading an optician's advertisement with a picture of a person wearing spectacles might make the same assumption. Duling Optical Company did in fact sell and fit eye glasses ground to a prescription. The term "prescription eye glasses" is not an inaccurate or untruthful description of the product sold by Duling. The company did in fact dispense prescription eye glasses. The use of the words "Prescription eye glasses" in the advertisements by Duling as an optician as such would not constitute "bait advertising employed to entice the public" within the meaning and purpose of the criminal statute SDCL 1967, 34-15-3 as we have construed it.

In the second cause of action the Board alleges that the defendants have been "capping and steering" persons to certain optometrists under arrangements and agreements with them, have controlled and directed the practice of optometry and have engaged in the practice of optometry. It seeks to enjoin such conduct.

SDCL 1967, Ch. 36-7 governs the practice of optometry. The practice of optometry is defined as has been set out above. 36-7-1. It is made unlawful for any person who is not a holder of a certificate of registration to practice or offer to practice optometry within the state. 36-7-10. The profession as created by the chapter is subject to regulation by the plaintiff Board which may promulgate rules of professional conduct and a code of ethics for registrants under the act. 36-7-15. Practice of optometry by a corporation is prohibited. 36-7-17. The Board may prescribe the mediums of advertising used by optometrists and the size, nature, and type of signs and professional cards that may be used. 36-7-19.

 SDCL 1967, Ch. 36-7 neither defines nor purports to regulate the business of an optician. An optician under our laws does not practice a profession. SDCL 1967, 36-7-25, defining unprofessional conduct by an optometrist, is as follows:

"36-7-25 Acts defined as unprofessional conduct.—The term 'unprofessional conduct,' as used in this chapter, is defined to mean

(1) Any conduct of a character likely to deceive or defraud the public;

(2) The loaning of his license or certificate by any licensed optometrist or any person or corporation;

(3) The employment of 'cappers' or 'steerers' to obtain business;

(4) 'Splitting' or dividing a fee or compensation with any person or corporation;

(5) The obtaining of any fee or compensation by fraud or misrepresentation;

(6) Employing either directly or indirectly any suspended or unlicensed optometrist to perform any work covered by this chapter;

(7) The advertising by any means whatsoever of optometric practice or treatment or advice in which untruthful, improbable, misleading, or impossible statements are made;

(8) Advertising by printed matter, radio, display, or any other means, the quotation of prices for a discount on or any specific amount of payment for eyeglasses, spectacles, or accessories thereto, ophthalmic lenses, frames or mountings, or the phrases 'free examinations,' 'moderate prices,' 'low prices,' 'guaranteed glasses,' 'satisfaction guaranteed,' or any variations thereof, or words of similar import;

(9) Seeking patronage by means of handbills, posters, circulars, newspapers, radio or periodicals, which means set forth more than the name, profession, title, location, phone number and office hours of the optometrist; or

(10) Advertising wherein the optometrist employs any form of newspaper, sign, literature or directory professional card or window or public exhibition dis-

> play of optical materials, handbills, road signs, clock signs, novelties or favors contrary to or violating the code of ethics or any of the other lawful rules and regulations properly promulgated by the state board."

As opticians the defendants would not be governed by the statute defining unprofessional conduct by optometrists. But if in fact the defendants practice optometery in this state in violation of SDCL 1967, 36-7-10 then in carrying out such unlawful activity and in furthering such unlawful practice they could be restrained not only from engaging in such unlawful practice but also the conduct defined as unprofessional by this statute. Of course, if defendants do not unlawfully practice optometry and they limit their business activities to the sales and services of an optician then they could not be held to the standards of professional conduct prescribed for optometrists by this statute.

It therefore appears that the basic question in this case is whether or not the defendants have practiced optometry in this state. This is a question of fact to be determined by the trier of the facts from the evidence in the case. The trial court found that Duling Enterprises, Inc., an Iowa corporation with its principal place of business at Sioux City, Iowa, is engaged in the retail dispensing of ophthalmic materials. It controls and causes to be maintained advertising signs in South Dakota and advertises over Radio Station WNAX in South Dakota. The Duling Optical Co. of South Dakota is an Iowa corporation authorized to do business in South Dakota. It maintains stores for the retail dispensing of ophthalmic materials at Watertown, Sioux Falls, Rapid City and Aberdeen. Edward Duling owns all the stock of these . corporations except for qualifying shares. As president and managing officer of each company he controls the policy of each and their methods of doing business. He also practices optometry in Sioux City, Iowa.

The court further found that the companies acting through the president have a large number of signs in at least 19 counties of South Dakota advertising the sale of eyeglasses, lenses

and "the price of such materials contrary to the provisions of SDC Supp. 54.0609". It found that the defendants "broadcast price or bait advertising of eyeglasses, lenses, and frames over Radio Station WNAX located at Yankton, South Dakota." By Finding of Fact 13 it is found that various forms of "price or bait advertising" was done as set out above.

The trial court found that defendants established a plan to control the practice of optometry through certain optometrists; that they solicited and arranged for such optometrists to locate in cities in which Duling Optical Co. had established or planned to establish stores for the sale of ophthalmic materials; that although each of such optometrists had formerly engaged in dispensing ophthalmic material, each one discontinued such practice completely or as to any customers referred to them for eye refractions by Duling in their new locations "in accordance with understandings between Duling and said optometrists, either express or implied." The court found that pursuant to such arrangement 80 per cent of more than 5000 prescriptions a year handled by Duling in its Sioux Falls store were written by an optometrist at Sioux Falls who had entered into such arrangement and a similarly high percentage of the prescriptions at the other Duling stores were written by optometrists or osteopaths pursuant to such arrangement.

The court further found that in each of the five retail stores maintained by Duling the great majority of the prospective customers come to said stores without a prescription and are referred by Duling employees to the cooperating optometrists; and that many of such prospective customers who have seen or heard the advertising "write in making inquiries and are advised by Duling employees that they can arrange appointments and said employees regularly quote the fee that will be charged by the optometrist."

The court found "That a mutual understanding exists between Duling and the cooperating optometrists and osteopaths named above whereby Duling will refer all customers coming to its retail stores to the cooperator or cooperators in the area

of the said retail store and that the cooperating optometrist or osteopath will not dispense and will recommend that the patient take the prescription to Duling to obtain eyewear."

Based on the findings of fact as above summarized the trial court found that the advertising used by Duling Enterprises, Inc., and Duling Optical Co. "constitutes price or bait advertising contrary to the provisions of SDC Supp. 54.0609 and the use thereof should be enjoined."

Conclusion of Law 4 made by the court is as follows: "That Duling Optical Co. of South Dakota, its officers, agents and employees have been engaging directly or indirectly in the practice of optometry and have been capping and steering customers of Duling Optical Co. to the cooperating optometrists and osteopaths named in the Findings of Fact and the attempting to engage directly or indirectly in the practice of optometry and the practice of capping and steering is contrary to the laws relating to the practice of optometry whether the capping and steering is to an osteopath or an optometrist and such action should be enjoined."

The court's judgment enjoined the Duling Companies and their officers, agents and employees from "advertising containing price or bait advertising of eye glasses, lenses, frames and other ophthalmic appliances wherein and whereby the price of such items is advertised directly or indirectly or employing or incorporating therein any of the following phrases or variations thereof, to-wit:" following which are listed items a to x as they appear in Finding of Fact 13 above set out. Such broad and sweeping restraint of advertising by the defendants apparently is based upon the theory that the criminal statute SDC 1960 Supp. 54.0609 (SDCL 1967, 34-15-3) prohibits the defendants as opticians from all advertising as to price and nature and quality of services without reference to whether or not they have engaged in the practice of optometry in South Dakota and in attempting to unlawfully practice optometry have engaged in capping and steering. This part of the injunction cannot be sustained.

■■ Part 3 of the judgment is as follows:

"(3) That Duling Optical Co. of South Dakota, its officers, agents and employees be and they are hereby enjoined and prohibited from engaging directly or indirectly in the practice of optometry, either by capping and steering, or otherwise and specifically said corporation, its officers, agents and employees are enjoined and prohibited from doing any of the following acts, to-wit:

(a) Inducing or attempting to induce any licensed practitioner to engage in refracting to determine whether an individual requires the use of eye wear, to locate in a town or city in which Duling Optical Co. of South Dakota, hereinafter called 'Duling' operates a retail store or in close proximity thereto or making contacts of any kind, either directly or indirectly with any such practitioners for such purpose.
(b) Having any agreement or understanding of any kind nature, either directly or indirectly, with any such practitioner that Duling will refer any customer making contact with it to such practitioner for an eye refraction and that such practitioner will recommend or suggest that the customer return to Duling for the purchase of any eye wear that may have been prescribed.

(c) Furnishing or providing customers that may come to Duling at any of its retail stores without a prescription with a list of any kind of the practitioners in the area that perform refractions or suggesting in any way where such a prescription may be obtained.

(d) Offering or agreeing in any manner or form to contact or call any practitioner to arrange an appointment for a refraction for any prospective customer for eye wear, or making any such contact with any practitioner for the purpose of arranging

> such an appointment for such prospective customer.
> (e) Contacting any practitioner in any manner or
> form for the purpose of making an appointment for
> a prospective customer for eye wear to have a refrac-
> tion performed or to secure a prescription for such
> eye wear."

Insofar as part (3) of the judgment above set out enjoins the de-
fendants from engaging directly or indirectly in the practice of
optometry, either by capping or steering, or otherwise, such is
supported by the record. The findings of fact by the trial court
are presumptively correct and where they are not against the
clear preponderance of the evidence legal conclusions of law
and judgment based thereon will not be disturbed on appeal. See
annotations to SDCL 1967, 15-6-52(a).

 Subdivision (b) of part (3) of the judgment pro-
hibits Duling from having any agreement or understanding with
a licensed practitioner for referral of business between them.
This is a form of "steering" and as such made unprofessional
conduct by an optometrist. SDCL 1967, 36-7-25(3). Defendants
may be restrained from entering into an agreement or arrange-
ment which is unlawful as to the other party.

But the other subdivisions of part (3) of the judgment reach
too far and prohibit conduct which separated from unlawful
practice of optometry and from unlawful capping and steering
would make it impossible for an optician to give helpful and
necessary service and information to his patrons. As to (a) there
might be a situation in which an optician in order to bring the
services of an optometrist to a community could properly render
assistance to that end. Subdivision (c) would prohibit an optician
from giving to his customers requested information as to where
a prescription for eye glasses could be obtained even by a list
containing all the practitioners in the area. Subdivision (d) and
(e) forbid an optician from assisting his customers in making
contact with any practitioner for an appointment even at request
of the customer. Subdivisions (a), (c), (d) and (e) of part (3) of
the judgment might be sustained if the prohibited conduct was

carried on for the purpose of and as a part of unlawful capping and steering and unlawful practice of optometry. But if an optician is enjoined from and refrains from such unlawful capping and steering and practice of optometry, then there is no lawful basis for prohibiting such conduct.

■■ As used in the professions, "the employment of cappers or steerers to obtain business" refers to the solicitation of business and describes unprofessional conduct. Under SDCL 1967, 36-7-25 defining unprofessional conduct, such words have the meaning commonly accepted in the professions and the elements of fraud or swindling are not necessary factors thereof. Sanchick v. Michigan State Bd. of Examiners in Optometry, 342 Mich. 555, 70 N.W.2d 757; People v. Dubin, 367 Ill. 229, 10 N.E.2d 809. In view of this, in order to sustain the court's findings that the defendants unlawfully employed cappers or steerers to obtain business it is not necessary to find that the defendants violated the criminal statute SDCL 1967, 34-15-3 (SDC 1960 Supp. 54.0609). It would be sufficient to find that the defendants did advertising to attract prospective customers as a part of the capping and steering. As stated the words "cappers and steerers" in the context of the statute defining unprofessional conduct means solicitors of business and no element of fraud or deception is necessary.

In this connection we note that the defendants' business files show that they had many inquiries from persons asking about eye examinations and prescriptions for eye glasses. Part of this may be attributed to the failure of some people to distinguish between the services of optometrists and opticians, but the evidence does tend to show that the use of the words "prescription eye glasses" in defendants' advertisements led to so many such inquiries that the defendants made use of a form letter (Exhibit 109) stating "Thank you for your letter inquiring about our prices for glasses and examinations. We do not have the facilities to test eyes here; however, we can arrange an appointment for you with an Optometrist at your convenience. The charge for the examination is $10.00. We would appreciate hearing from you in advance if you desire us to arrange for an appoint-

ment." Then prices for glasses and frames charged by Duling were quoted. In one of the newspaper advertisements received in evidence (Exhibit 115) the defendants stated "After your eye doctor examines their eyes * *" and "Prescription: Your doctor can prescribe anything he feels you should require, and you can rest assured that your prescription will be filled with the utmost care and accuracy at Duling Optical." When the defendants use the words "prescription eye glasses" or words of like import in their advertisements reasonably giving rise to the inference that they examine eyes and prepare prescriptions, then in order to avoid misleading the public they should state therein in effect that they are not optometrists.

■■■ A corporation cannot engage in the practice of a learned profession in South Dakota, nor may it practice the profession of optometry. Bartron v. Codington County, 68 S.D. 309, 2 N.W.2d 337, 140 A.L.R. 550. The trial court has found that the defendants have practiced optometry in South Dakota following much the same reasoning as did the Tennessee Court in State ex rel. Loser v. National Optical Stores Co., 189 Tenn. 433, 225 S.W.2d 263, wherein the court said:

> "It is not debatable that if they (the doctors) were duly registered and licensed, the three doctors involved, acting independently, had a right to examine eyes and write prescriptions for eye glasses, and it is also clear that as a merchant, the Defendant, as a merchant-optician, had a right to sell eye-glasses in accord with the prescription. If the evidence supported a conclusion that the profession of the doctors was distinct from and independent of the business of Defendant, the State would have no case, but we find that the evidence is to the contrary, and shows that the activity of the doctors and the sales of the Defendant were so merged and combined that from the advertisement by which the customer was attracted to the Defendant's store until the delivery of the glasses prescribed, the profession of the optometrist and the sale of merchandise by the optician was a single operation and enterprise."

The Tennessee court concluded that the optometrists were in fact the servants of the opticians notwithstanding the fact that the opticians actually exercised no control over the manner or result of the examination of the eyes of the customer, and the doctor was left free to exercise his own will and judgment and to use his own professional skill and methods of making such examination. See also McMurdo v. Getter, 298 Mass. 363, 10 N.E.2d 139, 140; Basford v. Department of Registration and Education, 390 Ill. 601, 62 N.E.2d 462; Sears Roebuck & Co. v. State Board of Optometry, 213 Miss. 710, 57 So.2d 726; State ex rel. Standard Optical Co. v. Superior Court for Chelan County, 17 Wash.2d 323, 135 P.2d 839; State ex rel. Fatzer v. Zale Jewelry Company of Wichita, 179 Kan. 628, 298 P.2d 283; State ex rel. Sisemore v. Standard Optical Co. of Oregon, 182 Or. 452, 188 P.2d 309.

In the recent case of People ex rel. Dunbar v. Lee Optical Co. of Denver et al., Colo., 452 P.2d 21, the State Board of Optometric Examiners sought to enjoin alleged unlawful practice of optometry by Lee Optical Company, a corporation, and to enjoin alleged acts by licensed optometrist in violation of the optometry statute. Pointing up the difference between the profession of optometry and the business of an optician under a statute like the South Dakota statute the court stated: "The statute involved here reflects the advancement of the optometrist to higher professional status (in his art of examination of the eye and prescription of eye glasses) and the continued presence of the optician as an artisan-businessman (in his field of dispensing spectacles)." On the issue of referring customer-patients the court said: "Unless accompanied by additional evidence of proscribed control by the optician over the optometrist, there is no prohibition of one recommending the other, one referring the customer-patient to the other, or the optician leasing equipment to the optometrist." Although sustaining the holding of the lower court that the reference of customer-patients was not prohibited and that the advertising done by the optician was proper, the court remanded the case for further findings on the allegation of unlawful practice of optometry.

■ Duling Enterprises, Inc., incorporated under the laws of the State of Iowa, had not procured a certificate of authority to do or engage in any business in South Dakota from the Secretary of State as provided by SDCL 1967, 47-8-1. Process in this case was served upon it on the theory that it had engaged in business in South Dakota within the meaning of the provisions of SDCL 1967, Ch. 15-7, that is, that it was subject to the jurisdiction of this State because it had transacted business in the state and had used and possessed property or an interest therein in the state. The corporate veil between the president and owner of all stock except qualifying shares in the two Duling Companies and those companies is transparent. The agents of one company carrying on activities in South Dakota were in effect the agents of the other company. Duling Enterprises, Inc., directly contracted for and controlled advertising signs which it caused to be erected in South Dakota under a contract with a sign company. It also contracted for and arranged for broadcasting of its advertising over Radio Station WNAX from the studios at Yankton, South Dakota. It had sufficient contacts with the State of South Dakota to subject it to the jurisdiction of this state. SDCL 1967, 15-7-2; International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; Ventling et al. v. Kraft, 83 S.D. 465, 161 N.W.2d 29.

■ The defendants in carrying on their business as opticians are not held to the professional standards set up for optometrists by SDCL 1967 36-7-25. Like any other merchant they have the right to advertise their wares and services subject to the same restrictions necessary to protect the public. Specifically the defendants have the right as opticians to advertise but in such advertising should not use terms or methods which reasonably would lead a person, who knows the distinction between an optician and an optometrist, into believing that they are optometrists. But the defendants may not pursuant to agreement or understanding with licensed optometrists indirectly or directly practice optometry and in doing so employ means or methods that would constitute unprofessional conduct by an optometrist.

The judgment is affirmed in part, reversed in part and remanded for further proceedings consistent herewith.

All the Judges concur.

BURNS, Circuit Judge, sitting for BIEGELMEIER, P. J., disqualified.