BURLEIGH A. RANDOLPH, District Attorney, La Crosse County
You have inquired about the legality of a union announcing to its membership prices on various ophthalmic devices such as glasses, frames, and contact lenses. You have attached a one page letter on union letterhead addressed "Dear Union Member" and signed by the president of a union local. *Page 336 
The letter starts: "We have negotiated the following arrangements with the King Optical Company." It proceeds to list prices for single vision glasses, bifocals, trifocals, contact lenses, and various frames. The union member is then referred to the King Optical Company, Winona, Minnesota. The letter was distributed in Wisconsin. You make no mention of any allegations concerning fraud or deceit. The specific issue is whether this union activity is prohibited advertising under sec. 449.10, Stats.
Section 449.10, Stats., reads as follows:
"449.10 Prohibited advertising. It shall be unlawful for any person to advertise either directly or indirectly by any means whatsoever any definite or indefinite price or credit terms on lenses, frames, complete glasses or any optometric services: to advertise in any manner that will tend to mislead or deceive the public; to solicit optometric patronage by advertising that he or some other person or group of persons possess superior qualifications or are best trained to perform the service; or to render any optometric service pursuant to such advertising." (Emphasis added)
The first determination to be made is whether the union local is a "person" within the meaning of the statute.
Section 990.01 (26), Stats., provides as follows:
"(26) PERSON. `Person' includes all partnerships, associations and bodies politic and corporate."
There is no question that the labor union or its officers doing the advertising are persons within the meaning of the statute and are, therefore, technically covered.
The second question is whether the union or its officers are persons within the actual intent and coverage of the statute, i.e., are they one of the persons covered? Our Supreme Court has interpreted the language "any person" in sec. 449.10, Stats., to cover every person. In Bedno v.Fast (1959), 6 Wis.2d 471, 95 N.W.2d 396, cert. den. 360 U.S. 931
(1959), the court specifically stated that the words "any person" are clear and unambiguous and there is no room for construction. 6 Wis.2d 471,476. *Page 337 
In the Bedno case, the court held that the prohibition on price advertising extended to opticians as well as optometrists. The language of the decision indicates that it extends to other persons as well and that proof of fraud and deceit is not required. The court discussed the history and intent of sec. 449.10, Stats. (then sec. 153.10), in the following terms:
"The legislative history of sec. 153.10 Stats. (created by ch. 273, Laws of 1943, introduced as Bill No. 390, A.), shows that it was drafted by an attorney for the department of agriculture and presented by a special committee representing the state and the optometric association. It would be entirely unreasonable to presume that the members of such a committee would sponsor a bill which would have the effect of prohibiting price advertising of glasses by optometrists but not by opticians.
"Retail stores which are permitted to sell eyeglasses of a certain type incidental to their other business are prohibited by sec. 153.02, Stats., from advertising the same, except by price marking on the glasses. Is the purpose of the chapter served by prohibiting advertising by optometrists and dime stoles, for instance, but not by opticians?
"We must hold that the statute means just what it says and applies to plaintiffs as `persons' engaging in advertising relating to the prices of `lenses, frames, complete glasses.'
"* * *
"The language of sec. 153.10, Stats., in no way indicates that proof of fraud is necessary to spell out an offense under its price-advertising prohibition. The practice, which the statute is intended to protect the public against, is that of filling a prescription to meet the price rather than the needs of the patient. To permit price advertising on the part of those who deal with the human eye, even truthful advertising, is to leave the door open for the unscrupulous practitioner to lure and to defraud unsuspecting members of the public. In the Johnson Case, supra, this court relied heavily upon Semier v. Oregon State Board of DentalExaminers (1934), 148 Or. 50, 34 Pac.2d 311, 294 U.S. 608, 55 S.Ct. 570,79 L.ed. 1086, where the court stated that the question *Page 338 
was whether the kind of advertising prohibited afforded the unscrupulous practitioner a means of perpetrating fraud and deception upon his patients. It was there recognized that although there is nothing harmful in itself in merely advertising prices, there could be no doubt that unethical practitioners do resort to price-advertising methods to lure the credulous to then offices for the purpose of fleecing them."
The language quoted above makes it clear that the purpose of the statute would not be served by allowing a union to engage in price solicitation which is directly prohibited for King Optical Company. King would still be "filling a prescription to meet the price." It is interesting that the plaintiffs in Bedno v. Fast were co-partners also doing business as the King Optical Company. Because the advertising is now circulated by an intermediary does not make the intermediary's conduct lawful.
Following the Bedno case this office had occasion to further construe the coverage of the words "any person" in sec. 449.10, Stats. In 48 OAG 223 this office decided that a Wisconsin newspaper carrying price advertising by an out-of-state optometrist would violate the law. The newspaper, as carrier of the advertising, was a person. We specifically took the position, as did the trial court in Bedno, that the words any person mean "all persons." 48 OAG 223, 225 (1959).
It is clear, thus far, that a union or its officers may not advertise in light of the prohibitions in sec. 449.10, Stats. You are particularly concerned whether an announcement in the form described above constitutes advertising. In 48 OAG 223 we took the position that:
"* * * An `advertisement' * * * is `a printed announcement, as of goods for sale, in a newspaper, magazine, etc.,' and `to advertise' is `to give information to the public concerning; make public announcement of, by publication in periodicals, by printed bills, by broadcasting over the radio, etc.'" 48 OAG 223, 225.
Advertising is defined as "the action of calling something to the attention of the public * * *." Webster's Third New International Dictionary. In the law, advertise means: *Page 339 
"* * * the act or practice of attracting public notice and attention. It includes all forms of public announcement which are intended directly or indirectly in the furtherance or promulgation of an idea, or in directing attention to a business, service, or entertainment. The idea underlying the word has reference not so much to the vehicle or instrumentality used in getting the notice before the public, as to the diffusion, or the bringing home to the public, of the information or matter contained in the notice." 3 Am. Jur. 2d Advertising § 1, p. 356.
"Advertising" as a verb may mean:
"To advise, to announce, to apprise, to command, to give notice of, to inform, to make known, to notify, to publish, or to warn, orally, or by written or printed publication * * *." 2 C.J.S. Advertise, p. 890.
Our statute makes it a crime to advertise, or to engage in advertising. The union officers' and the union's conduct here in printing and disseminating the letter is advertising. It matters not that the publication goes to a limited group of people.
The statute prohibits advertising — makes it a crime "to advertise." The advertising need not be to the public at large to be prohibited. Every solicitation or advertisement is somehow limited, e.g., to newspaper readers, magazine subscribers, rural boxholders, etc. Limiting the solicitation to a small segment of the public does not change the nature of the act.
A California intermediate appellate court in Barkin v. Board ofOptometry (1969) 269 CA 2d 714 decided the question of how "public" advertising had to be to constitute advertising within the meaning of the California statutes by reference to Corpus Juris:
"The word does not mean all the people, nor most of the people, nor very many of the people of a place, but so many of them as contra distinguishes them from a few." (50 CJ 844, 845) Barkin, supra, p. 728.
The court in Barkin squarely held that a solicitation by a California optometrist materially similar to the one here *Page 340 
was prohibited advertising under the California statutes. The court concluded:
"It is perfectly plain, however, that if a practitioner is permitted to subdivide the general public he could never violate: [The applicable Calif. statute.] * * *
"We think the word `public' in sec. 3000 refers to any and all persons who, at the time an advertisement is addressed to them, have not yet entered into some kind of professional relationship, actual or prospective, with the licensee. Just being a member of a union which recommends the licensee to its members is obviously not enough." Barkin,supra, pp. 729-730.
The application of the reasoning in Barkin serves the purpose behind sec. 449.10, Stats.
Moreover, sec. 449.10, Stats., makes it clear that it prohibits advertising "by any means whatsoever." The fact that the solicitation here takes the form of a listing of union benefits to its members does not take it outside the class of prohibited advertising prescribed by the statute. To so conclude would be to emasculate the statute and allow any optical company to avoid the law merely by finding a front organization.
The final question you raise involves potential constitutional questions in applying sec. 449.10, Stats., to a union. As you pointed out in your letter, the union has an argument that such a service to its membership constitutes a protected part of the freedom of association granted to the organization by the Constitution. The case law gives little comfort to that contention under the circumstances here. The courts have gone no further than the United States Supreme Court's decision in United Mine Workers of America v. Illinois State BarAssociation (1967), 389 U.S. 217, 88 S.Ct. 353, 19 L.ed. 2d 426. In that case, the court held that the union could not be restrained from employing licensed attorneys on a salary basis to represent its members in workmen's compensation litigation. The Illinois State Bar Association had sought to enjoin this practice under its state practice regulations. The court held that although the legislature and *Page 341 
the bar had an interest in regulating the practice of law, where those regulations in their operation significantly impaired the value of associational freedoms, the state regulations must give way. That case and its progeny are distinguishable from this case. There the court was able to view the Illinois regulations as actually affecting the exercise of vital rights. In addition, the court was able to find that the regulation was "not needed to protect the state's interest in high standards of legal ethics." 389 U.S. 217, 225. Other cases to the same effect are Railroad Trainmen v. Virginia Bar (1964), 377 U.S. 1,84 S.Ct. 113, 12 L.ed. 2d 89, 11 A.L.R. 3rd 1196, and NAACP v. Button
(1963), 371 U.S. 415, 83 S.Ct. 328, 9 L.ed. 2d 405.
In April the United States Supreme Court again spoke to the issue inUnited Transportation Union v. State Bar of Michigan (1971), ___ U.S. ___91 S.Ct. 1076, 28 L.ed. 2d 339. That case again dealt with the "basic right to group legal action" under the First Amendment. The language and rationale of this case again gives little comfort to developing any form of group legal right to dissemination of commercial data under the circumstances here. The test has been one of balancing the interests in each of the cases dealing with legal services. Here the State's interest in the public's eyesight is clear and the need for the regulation has been recognized by our State Supreme Court. Moreover, prohibiting the union's circulation of the material in question is not a significant impairment of associational freedoms. The optometrist, the optician, the optical corporation, the newspaper, and the retail merchant are under the same restraint.
I would be remiss if I did not add that the real violator in these situations is often the person or corporation which approaches the union officials with such a plan since this approach in itself may constitute prohibited advertising. The union officers often agree to contact their members in a good faith desire to benefit their membership. This puts the union in the position of unintentionally violating the law. Under these circumstances an agreement to cease and desist may be more appropriate than criminal prosecution. In reaching a determination under the facts presented I feel that I *Page 342 
should point out that the issue of appropriateness of a prosecution in any particular case is not before me. That decision may rest in large part on evidence, availability of witnesses and some or all of the other discretionary factors recently described by our Supreme Court inKurkierewicz v. Cannon (1969), 42 Wis.2d 368, 166 N.W.2d 255.
I conclude that a program such as that outlined in general terms above probably violates sec. 449.10, Stats.
RWW:DJH