STATE, Respondent, v. FAIRBANKS, Appellant.

(273 N. W. 188)

(File No. 8045. · Opinion filed May 15, 1937)

*Tom Kirby* and *L. E. Waggoner,* both of Sioux Falls, for Appellant.

*Clair Roddewig,* Atty. Gen., and *Herman L. Bode,* Asst. Atty. Gen., for the State.

POLLEY, J.   Appellant was prosecuted and convicted for operating a certain music vending slot machine without having paid the statutory license fee thereon, in violation of the provisions of section 1, chapter 206, Laws 1935.   Said section reads as follows: "Any person, firm, corporation or association who shall use, install or display for public use, any gum machine, mint vending machine, candy vending machine, marble board, striking machine, electric shock machine, match machine, sanitary or hygienic appliance dispensers or any other machine requiring the deposit of money or metal chips therein before operating, other than sanitary napkin machines, pay telephones, gas meters, electric light meters, water meters, pay toilets, public weighing scales, postage stamp machines, and drinking cup machines, within the State of South Dakota, shall before doing so, secure a license for said machine from the Secretary of Agriculture of the State of South Dakota and pay the license fee provided herein."

The machine used by appellant, as described in the evidence, is a "player phonograph machine" containing twelve records and is operated by placing a nickel in the machine and moving a dial to the record the operator wishes to play.   The machine will then play one of the twelve records.

A machine such as above described is not specially listed in the statute, therefore if included in the said statute at all must come within the clause, "or any other machine requiring the deposit of money or metal chips therein before operating."

In this case, as stated by appellant in his brief, the question is, "Do phonograph player machines as described in the evidence, and which dispense music for money, come within the terms of chapter 206, Session Laws of 1935, so as to require a li-

cense as provided in said law?" We think they do. It will be noted that the statute especially enumerates certain vending machines. Then follows the clause, "or any other machine requiring the deposit of money or metal chips therein before operating"; these machines are all subject to the payment of a license fee. Then follows an enumeration of other vending machines which are especially enumerated as exempt from the payment of license fees.

It is clear to us from the wording of this statute that it was the intent of the Legislature to deal with the whole subject of slot vending machines. The machines affected by the statute are all slot vending machines that are operated by dropping a coin or metal chip into the slot. Some of them vend gum, some of them vend candy, some of them vend matches, and still others of them vend music. While some of them vend one thing and some another, they are all vending machines and they are all slot machines.

· It is the contention of appellant that the rule "ejusdem generis" applies to this case and excludes the machine in question. This phrase means "of the same kind or species," and the rule is that: "Where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase is held to refer to things of the same kind as previously enumerated." Ex Parte Carson, 33 Okl. Cr. 198, 243 P. 260, 262. It is appellant's contention that the machine involved in this case is only a phonograph, and therefore so unlike the objects that are specifically enumerated that it does not come within the meaning of the clause "or any other machine requiring the deposit of money or metal chips therein before operating." With this contention we cannot agree. The machine is a slot machine; a vending machine. The only difference between it and a candy vending machine is that with one machine you drop a nickle in the slot and it passes out a package of candy; with the other you drop a nickle in the slot and it plays a phonograph record. They are both nickle in the slot machines and both belong to the same class.

Appellant cites and relies on First Nat. Bank of Anamoose v. U. S., 206 F. 374, 46 L. R. A. (N. S.) 1139 and Ex parte Carson, supra. State v. Gardner 174 Iowa 748, 156 N. W. 747, 748, L. R. A. 1916D, 767, Ann. Cas. 1917D, 239, merely holds that a statute making it a crime to resort to a house of ill-fame "for the purpose

of prostitution" does not include men as well as women. It does not attempt to decide any question involved in this case.

Ex parte Carson, supra, involved a statute in Oklahoma which reads as follows: "That no females shall be employed or permitted to work in any manufacturing, mechanical or mercantile establishment, laundry, bakery, hotel or restaurant, office building or warehouse, telegraph or telephone establishment or office or printing establishment, or book bindery, or any theatre, show-house or place of amusement or any other establishment, employing any female, more than nine (9) hours in any one day, nor more than fifty-four (54) hours in any one week." Comp. St. Okl. 1921, § 7222 (40 Okl. St. Ann. § 81).

Petitioner, a national bank in Oklahoma City, permitted a woman bookkeeper to work more than nine hours a day and was prosecuted and convicted for violating the above statute. The court held that. the law did not apply to bookkeepers, basing the distinction on the ground that the enumerated classes related to physical labor, while work in a bank was largely mental.

. In First Nat. Bank of Anamoose v. U. S., 206 F. 374, 46 L. R. A. (N. S.) 1139, the Circuit Court of Appeals of the Eighth Circuit held that a bank was not included in, and was not guilty under the following statute for collecting a sight draft and delivering a bill.of lading to the consignee on an interstate shipment of intoxicating· liquor. The statute reads as follows: "Any railroad company, express company, or other common carrier, or any other person who, in connection with the transportation of any spiritous, vinous, malted, fermented, or other intoxicating liquor of any kind, from one State, Territory, or District of the United States, or place noncontiguous to but subject·to the jurisdiction thereof, into any other State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, or from any foreign country into any State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, shall collect the purchase price or any part thereof, before, on, or after delivery, from the consignee, or from any other person, or shall in any manner act as the agent of the buyer or seller of any such liquor, for the purpose of buying or selling or completing the sale thereof, saving only in the actual transportation and delivery of the same, shall be fined not more than $5,000."

Cr. Code § 239 (18 U. S. C. A. § 389). But neither of these cases are decisive of, nor at all persuasive in the present case.

In Cades v. Mosberger Lumber Co. (Mo. App.) 291 S. W. 178, the defendant leased a sawmill from the plaintiff giving the plaintiff certain notes, each note representing the rent for a month. The lease contained this provision: "* * * 'if from flood or any other cause beyond the control of said lessee they are forced to suspend operations of the mill, then they are to pay to said lessor a monthly rental of only $100 per month during the period of such suspended operations, in lieu of the note or notes hereinbelow described for said month.' " Five of the notes given to plaintiff were not paid and plaintiff brought suit for the collection thereof. Defendant defended on the ground, "* * * that the United States was at war with Germany, and that men, including common laborers and workmen accustomed to engage in operating sawmills and lumber plants throughout the United States and particularly in the state of Louisiana, and in the parish of Madison, had been called into the war service of the United States, and had been withdrawn for war emergency purposes by authority of the United States from their usual work and customary activities, by reason whereof, and for said causes beyond the control of the defendants, they were unable to procure workmen necessary to operate said mill, and were forced to suspend and did suspend operations of said mill during and throughout each of said five months, thereby, and by the terms of the lease, each of said notes in the said five counts became ineffective and was rendered void and was canceled and the defendants relieved from the responsibility on each of said five notes, and that the plaintiff is not entitled to recover thereon." The defendant invoked the rule "ejusdem generis," but the court held that the cause of the suspension came within the provision "or any other cause beyond the control of said lessee" and held that the plaintiff was not entitled to recover on the notes.

In this case we think the music vending machine operated by the appellant was sufficiently similar to, and in the same class with, the enumerated machines to come under the clause: "or any other machine requiring the deposit of money or metal chips therein before operating."

The judgment and order appealed from are affirmed.

All the judges concur.