ABERDEEN ED. ASS'N, Appellant v. ABERDEEN BD. OF ED., ABERDEEN IND. SCH. DIST., Respondent

(215 N.W.2d 837)

(File No. 11225. Opinion filed March 19, 1974)

Maloney, Kolker, Kolker & Fritz, Dennis Maloney, Aberdeen, for plaintiff-appellant.

Siegel, Barnett, Schutz, O'Keefe & Ogborn, Terence A. O'Keefe, Aberdeen, for defendant-respondent.

WINANS, Justice.

In this opinion we refer to the plaintiff as "Association" and the defendant as "Board". This is an action brought by the Association against the Board seeking a declaratory judgment. The parties have stipulated to the facts. The complaint asked that the following items be declared subject to negotiation for an agreement to cover the 1972-73 school year: (1) elementary conferences, (2) teachers' aides, (3) elementary planning, (4) class size, (5) audio-visual expansion, (6) budget allowances, (7) schoolwide guidance and counseling program, and (8) mandatory retirement of administrators. The Board, through its answer, affirmatively alleged that SDCL 3-18 is unconstitutional, and that even if SDCL 3-18 is constitutional, the eight items mentioned are not proper subjects of negotiation under the provisions of that chapter. It is the contention of the Association that the items relate to "other conditions of employment" and are therefore proper subjects of negotiation.

The constitutionality issue framed by the pleadings was thereafter neither argued nor briefed by either of the parties. This court will not pass on the constitutional issues or questions if the merits of the case may otherwise be decided. House of Seagram,

Inc. v. Assam Drug Co., 83 S.D. 320, 159 N.W.2d 210. We have also held that no statute should be held unconstitutional unless its infraction of constitutional principles is so plain and palpable as to admit of no reasonable doubt. Application of Nelson, 83 S.D. 611, 163 N.W.2d 533.

In Head v. Special School District No. 1, 288 Minn. 496, 182 N.W.2d 887, we find their court saying:

> "In our consideration of whether these statutes are constitutional or not, we start with the principle that a law must be sustained unless unconstitutional beyond a reasonable doubt. Laws are held constitutional if reasonably possible. The power of the courts to hold the law unconstitutional is exercised only when absolutely necessary, and then, with extreme caution. If the language of the law can be given two constructions, one constitutional and the other unconstitutional, the constitutional one must be adopted, though the unconstitutional construction may be more natural. A law may not be declared unconstitutional merely because the court believes it is bad policy or bad economics."

We do not decide this case on constitutional grounds, nor foreclose the issue nor intimate what our views might be when it is properly before us for decision.[1] The sole question for our determination is whether the trial court erred in determining that the above items are not proper subjects of negotiation under SDCL 3-18 and that the Board was entitled to judgment dismissing the complaint. We affirm the lower court's holding.

The authorization for negotiation between public employees

1. We also refer to an excellent article by Professor of Law at the University of South Dakota, Marion R. Smyser, entitled, "PUBLIC EMPLOYEES AND PUBLIC EMPLOYEES UNIONS: THEIR RIGHTS AND LIMITATIONS IN SOUTH DAKOTA", found in the Winter 1972 Edition, Vol. 17, No. 1 of the South Dakota Law Review. We quote from the headnote which we find supported by the article: "This article deals with the legal limitation on public employees and public employees' unions in South Dakota. The author concludes that the fixing of wages, hours and other terms of employment for public employees is a governmental function which, in the absence of a constitutional amendment, cannot be delegated to any private individual or entity."

and public employers is contained in the Public Employees' Unions Law, SDCL 3-18. Sec. 3-18-1 defines a public employee as any person "holding a position by appointment or employment in the government of the State of South Dakota or in the government of any one or more of the political subdivisions thereof, or in the service of the public schools, * * *". It is stipulated that plaintiff is the bargaining association on behalf of the "classroom teachers, nurses and counselors employed by Defendant", and has negotiated with the defendant "for the past three years and specifically for the school year 1972-73". Sec. 3-18-3 of the act provides in part:

> "Representatives designated or selected for the purpose of formal representation by the majority of the employees in a unit appropriate for such purposes shall be the exclusive representatives of all employees in such unit for the purpose of representation in respect to rates of pay, wages, hours of employment, or other conditions of employment; * *."

It is the last phrase quoted above, "other conditions of employment", which gives rise to the present controversy. In Westinghouse Electric Corporation v. N. L. R. B., 1967, 4 Cir., 387 F.2d 542, the court had before it the question of whether increases in food prices (a penny for carry-out coffee and five cents for hot food entrees) established by an independent contractor operating cafeterias in Westinghouse plants was a mandatory subject for collective bargaining between Westinghouse Electric Corp. and Salaried Employees Association, a union representing some of the Westinghouse employees. A majority of the N.L.R.B. held that cafeteria prices were "'conditions of employment' and a mandatory subject of bargaining". In effect the N.L.R.B. held that the statutory wording, "terms and conditions of employment", was intended by Congress to be used in its " 'broadest sense' and encompasses virtually everything which bears on the employment relationship and to which workers seek management's agreement". The court held, however, that "At best, the history merely shows that Congress did not desire to enumerate specific bargaining subjects; it does not show that the phrase was meant to embrace every issue that might be of interest to unions or employers." The court held:

"In the view of the majority of this court, it was not the intent of Congress in enacting the National Labor Relations Act to sweep every act by every employer within the ambit of 'conditions of employment.' The dissenting members of the Board pointed out, in effect, that equating the trifles here involved with subjects such as wages, hours, working conditions, job security, pensions, insurance, choice of bargaining representatives or other subjects directly and materially affecting 'conditions of employment' is sheer nonsense. Efforts to apply a theory such as the Board adopted in *Weyerhaeuser* to clearly inappropriate situations should be discouraged where the reasons for such attempted application are, as charged by the petitioner, absurd and mischievous. Balanced and effective collective bargaining should be the ultimate objective. The statutory purpose may best be served by formulating and applying a reasonable concept of 'conditions of employment' in determining subjects of mandatory bargaining. We find in this case no condition of employment which is a subject of mandatory bargaining."

Other courts interpreting the same phrase have reached conclusions that employers are not required to negotiate every item affecting employment. The following is a list taken from the Attorney General's Report, 1971-72, at page 184:

"McCall Corporation v. N. L. R. B. (4th Circuit, 1970) 432 F.2d 187 (Food prices where employer had total control of food service) Seattle 1st National Bank v. N. L. R. B. (9th Circuit, 1970) 444 F.2d 30 (investment services provided to employees); District 50, United Mines Workers, Local 13942 v. N. L. R. B. (4th Circuit, 1966) 358 F.2d 234 (employer's decision to contract work out); and N. L. R. B. v. King Radio Corp. (10th Circuit, 1969) 416 F.2d 569 (contracting out bargaining unit's work). In each of these cases, the court held that the employers did not have to negotiate the working conditions as they were not *material* working conditions."

The Legislature has the duty to establish and maintain public schools and to secure to the people the advantages and opportunities of education. Art. VIII, § 1, South Dakota Constitution. They have delegated a part of this authority which they have to school boards, giving them general powers. SDCL 13-8-39. Throughout the Code there are many other delegations of power by the Legislature in the management of the school system. In Wichita Public Schools Employees Union Local 513 v. Smith, 1964, 194 Kan. 2, 397 P.2d 357, the Supreme Court of Kansas said:

> "The entire matter of qualifications, tenure, compensation and working conditions for any public employee involves the exercise of governmental powers which are exercised by or through legislative fiat. Under our form of government public office or public employment cannot become a matter of collective bargaining and contract."

In Dahl, et al. v. Independent School District, 1922, 45 S.D. 366, 187 N.W. 638, this Court held:

> "To be sure, a board of education has only such powers as are expressly given to it or as result by fair implication from the powers expressly granted, and can enter into such contracts only as it is empowered expressly or impliedly to make. It cannot engage in business or make contracts outside of its functions touching education. Such boards are usually given extensive discretionary powers in order that they may be assisted in carrying out the general school system adopted by the state and thus promote the cause of education. The courts will not interfere with such boards in the exercise of this discretion, except to prevent an abuse of it. The action of a board of education taken in the reasonable exercise of its discretion and without fraud is not subject to judicial review." Cases cited.

■ The Association points out that it is significant "that nothing in Chapter 3-18 of the South Dakota Compiled Laws requires that the Board agree to the specific terms of any of the

Association's proposals. On the contrary, all the Chapter mandates is that the Board negotiate the proposals." It is true that SDCL 3-18-2 states in part: "Such obligation does not compel either party to agree to a proposal or require the making of a concession but shall require a statement of rationale for any position taken by either party in negotiations." Just what significance that might have in the ultimate disposition of the proposals is not entirely clear, but it is clear to us that it does not mandate the Board to negotiate conditions which are not considered material working conditions and which under reasonable interpretations should be the prerogative of the Board as in management.

■ It is our opinion that the term "other conditions of employment" as used in SDCL 3-18-3 means conditions of employment which materially affect rates of pay, wages, hours of employment and working conditions, and quoting from the Attorney General's opinion, supra, "School boards should concern themselves with items affecting wages or hours, but not those other items which are petty, which can be used for harassment purposes, or which are inapplicable to the bargaining process." In our opinions the items appealed by the Association are not material items to working conditions or wages and hours, but rather are items belonging wholly to the discretion of the Board. This ruling does not mean that public employees have no right to organize because as stated in City of Springfield v. Clouse, 1947, 356 Mo. 1239, 206 S.W.2d 539: "All citizens have the right, preserved by the First Amendment to the United States Constitution * * * to peaceably assemble and organize for any proper purpose, to speak freely and to present their views and desires to any public officer or legislative body", and quoting further from the same opinion:

"Therefore, we start with the proposition that there is nothing improper in the organization of municipal employees into labor unions; and that no new constitutional provisions were necessary to authorize them. However, collective bargaining by public employees is an entirely different matter. This was pointed out by such a friend of union labor as our late President, Franklin D. Roosevelt, in a letter to the head of a union

of federal employees, which was read in the debates on Section 29 in our Constitutional Convention. This letter states: 'All Government employees should realize that the process of collective bargaining, as usually understood, cannot be transplanted into the public service. It has its distinct and insurmountable limitations when applied to public personnel management. The very nature and purposes of Government make it impossible for administrative officials to represent fully or to bind the employer in mutual discussions with Government employe organizations. The employer is the whole people, who speak by means of laws enacted by their representatives in Congress. Accordingly, administrative officials and employes alike are governed and guided, and in many instances restricted, by laws which established policies, procedures, or rules in personnel matters.' "

Our constitutional provisions grant similar rights and, without quoting further, we find Art. VI, §§ 4 and 5 particularly appropriate.

For the reasons we have stated, we affirm the judgment of the trial court.

DUNN, J., concurs.

BIEGELMEIER, C. J., and WOLLMAN J., concur specially.

DOYLE, J., dissents.

BIEGELMEIER, Chief Justice (concurring specially).

I concur in this opinion excepting the inclusion of the dicta hereafter noted.

Justice Winans' opinion correctly states our House of Seagram v. Assam Drug Co., 83 S.D. 320, 159 N.W.2d 210, holds that this court does not pass on constitutional questions if the merits of the case may otherwise be decided. Following this is a statement of our guideline for declaring a statute unconstitutional, citing Application of Nelson, 83 S.D. 611, 163 N.W.2d 533,

and a quotation from the Minnesota Supreme Court decision, Head v. Special School District No. 1, 288 Minn. 496, 182 N.W.2d 887.

While this shows research on the part of the author on this subject, admittedly the authorities are dicta.

WOLLMAN, Justice (concurring specially).

The law in question here, SDCL 3-18, is entitled "Public Employees' Unions." We are dealing with a law that affects not only teachers but all public employees generally, inasmuch as SDCL 3-18-1 provides that:

> "The words 'public employees' as used in this chapter shall mean any person holding a position by appointment or employment in the government of the state of South Dakota or in the government of any one or more of the political subdivisions thereof, or in the service of the public schools, or in the service of any authority, commission, or board, or any other branch of the public service."

Our holding in the instant case will of necessity, by implication if not by outright declaration, set the pattern for the interpretation of "conditions of employment" as that phrase relates to other employees in the public sector.

The appellant Association asks that we give a broad, expansive reading to the phrase "conditions of employment" in the light of the special group of public employees involved in this case.

> "The Association submits that the phrase 'conditions of employment' as it applies to a specific and somewhat unique group of employees, namely teachers, properly encompasses any subject matter having an impact or effect on the working day or working life of a teacher." Brief for Appellant at 8.

This argument would perhaps be more persuasive if we were dealing with an act that dealt solely with the subject of teachers'

negotiations, as was the case in West Hartford Education Association, Inc. v. DeCourcy, 162 Conn. 566, 295 A.2d 526, where the act was entitled the "Teacher Negotiation Act" and imposed upon the board of education "\* \* \* the duty to negotiate with respect to salaries and other conditions of employment about which either party wishes to negotiate . . . . ."

It is important that we keep in mind that we are dealing with public employers and employees rather than with employers and employees in the private, profit-making sector of our economy. Public employees in this state have only recently been given the specific statutory right to form and join labor or employee organizations (SDCL 3-18 had its origin in Ch. 88, Laws of 1969); we should give due regard to whatever limitations the legislature has seen fit to write into the negotiations act at this relatively early stage of the operation of the public employees' union law in this state.

SDCL 3-18-2 provides in part that:

"\* \* \* the governmental agency or its designated representatives shall be required to meet and negotiate with the representatives of the employees at reasonable times in connection with such grievance procedures and conditions of employment. \* \* \*"

If this were the only statute to be considered, it could be argued that SDCL 3-18-2 is as broad as the statute described in the West Hartford case, supra. We must also consider SDCL 3-18-3, however, which in its original form provided in part that:

"Informal recognition shall give an organization the right to meet with, confer, and otherwise communicate with the governmental agency or its designated representatives on matters of interest to its members. \* \* \*" (Ch. 88, § 7, subdiv. 3, Laws of 1969)

SDCL 3-18-3 was amended in 1971 (Ch. 20, § 1, Laws of 1971) so that in pertinent part it now reads:

"Representatives designated or selected for the pur-

pose of formal representation by the majority of the employees in a unit appropriate for such purposes shall be the exclusive representatives of all employees in such unit for the purpose of representation in respect to rates of pay, wages, hours of employment, or other conditions of employment &ast; &ast; &ast;".

We must assume that the legislature amended this section from its original broad, nonspecific delineation of the subjects on which employee representatives were given authority to represent an employee unit to a specific enumeration of the subjects of such representation for the purpose of limiting employee representation to the specific subject matters set forth in the statute as amended.

When viewed against this background, it seems reasonable that the phrase "or other conditions of employment" as used in SDCL 3-18-3 refers back to the immediately preceding specifically enumerated items, "rates of pay, wages, hours of employment," and as thus limited refers to those areas of the employment relationship encompassed within the subjects of compensation and required periods of attendance at and permitted periods of absence from the employees' place of employment. Although such an interpretation of the phrase in question may include areas within the periphery of the statutorily enumerated subjects that directly and materially affect compensation and hours of employment, it is not so broad as to include the eight items sought to be negotiated by the Association, on the basis of the record before us.&ast; This interpretation is consistent with and follows from the application of the familiar rule of ejusdem generis. Cf. State v. Fairbanks, 65 S.D. 272, 273 N.W. 188.

---

&ast; If the record (as opposed to appellant's explication in its statement of negotiation items presented to the Board of Education) established that, e. g., elementary conferences and elementary planning periods had a direct material effect on a teacher's hours of employment, then these two items might very well be proper subjects of negotiation. Although to a member of appellant Association this might seem to be a self-evident proposition, so clear as to be beyond the need of establishing by empirical evidence, I am reluctant to engage in speculation or assumption about the nature and extent of the effect these two subjects may have on a teacher's hours of employment. Likewise as to the other items sought to be negotiated.

As thus interpreted and when read in conjunction with SDCL 3-18-2, the phrase "other conditions of employment" in SDCL 3-18-3 defines and limits the phrase "conditions of employment" as used in SDCL 3-18-2. Any other interpretation of the latter section would lead to the inconsistent result that the duty to negotiate imposed by SDCL 3-18-2 on the governmental agency would be broader than the authority given employee representatives by SDCL 3-18-3.

In summary, then, although I agree with the result reached by the majority opinion, I do so for slightly different reasons, and I expressly decline to join in any discussion of the constitutionality of SDCL 3-18 inasmuch as that issue is not before us.

DOYLE, Justice (dissenting).

In this case the court was requested to construe the meaning of the term, "other conditions of employment", as it appears in SDCL 3-18-3:

> "Representatives designated or selected for the purpose of formal representation by the majority of the employees in a unit appropriate for such purposes shall be the exclusive representatives of all employees in such unit for the purpose of representation in respect to rates of pay, wages, hours of employment, or *other conditions of employment*; provided that any individual employee, or a group of employees, shall have the right at any time to present grievances to their employer and to have such grievances adjusted without the intervention of the formal representative as long as the adjustment is not inconsistent with the terms of any settlement with the formal representative then in effect, and provided that the formal representative has been given opportunity to be present at such adjustment." (emphasis supplied)

The majority defines the term to be "conditions of employment which materially affect rates of pay, wages, hours of employment and working conditions". Applying this definition, they hold that all of the controverted items "are not material items to working conditions or wages and hours".

I first must state that I disagree with the narrow construction placed on the meaning of the term "other conditions of employment". I feel West Hartford Education Association, Inc. v. DeCourcy, 1972, 162 Conn. 566, 295 A.2d 526, is more to the point than many of the cases cited by the majority, notwithstanding Justice Wollman's argument in his special concurrence to the contrary.

It is my opinion, even under the majority's definition, that several of the items are still proper subjects of negotiation. The first item, elementary conferences, certainly affects the working day of a teacher in that under the present system these conferences are held after school hours. Therefore, not only is this item a "condition of employment", it actually affects the teacher's "hours of employment". The second item, teachers' aides, involves the use of personnel other than teachers to perform such tasks as milk distribution; supervision of playgrounds, corridors, lavatories, sidewalks, buses, health services; the collection of money for such auxiliary fees as locker, activity, milk and picture fees; and clerical functions such as duplicating instructional and other materials and keeping registers and cumulative record cards. The performance of these tasks by a teacher, I believe, clearly relates to and materially affects his conditions of employment. The third item, elementary planning periods, is also in my opinion a negotiable item since it involves whether or not a certain period of time should be set aside during the school day which a teacher may use to plan and prepare for the performance of his teaching responsibilities. Even if this item fails to fit within the category of a "condition of employment" as defined by the majority, I believe it comes under the heading of "hours of employment" since if no time is set aside during the school day, the teacher will be compelled to use his own time in planning his presentation of educational material to his students. The fourth item, class size, is also negotiable. The impact of the size of a class is a significant factor in regard to a teacher's work load and as such has a material effect on his "condition of employment".

Finally, I expressly disapprove of the majority's discussion of the constitutionality of SDCL 3-18. Therefore, for the reasons above stated, I dissent.