**In the Matter of the Grievance of Charles O'NEILL, Grievant.**

**No. 14347.**

Supreme Court of South Dakota.

Argued Feb. 13, 1984.

Decided May 2, 1984.

N. Dean Nasser, Jr., P.C. by N. Dean Nasser, Jr., Sioux Falls, for appellant.

South Dakota State Penitentiary by Dennis C. Maloney, Aberdeen, for appellee.

FOSHEIM, Chief Justice.

Charles O'Neill (Grievant) appeals the circuit court affirmance of a career service commission order denying his grievance against the South Dakota State Penitentiary (Penitentiary). We reverse and remand for a new hearing before the career service commission.

Grievant was employed by the Penitentiary from January 22, 1979, to May 19, 1982. He was a career service employee and his last position was a Correctional Officer II. His duties included maintaining order in the penitentiary and transporting prisoners.

Grievant's employment was terminated on May 19, 1982, following a hearing before the Penitentiary disciplinary board. He appealed the termination in a grievance hearing before a hearing examiner and Warden Solem. The warden sustained the termination. Grievant then requested a hearing before the South Dakota Board of Charities and Corrections. The Board sustained Warden Solem. Grievant appealed this decision to the career service commission pursuant to SDCL 3-6A-38. After a de novo hearing the commission entered an order denying the grievance. The circuit court affirmed the commission.

The incidents upon which the discharge rests are: (1) DWI and resisting arrest charges which occurred in June 1980 (pursuant to a plea bargain, Grievant pleaded guilty to resisting arrest and speeding); (2) a hit-and-run accident on July 3, 1980; (3) an assault against a local citizen; and (4) an arrest for disturbing the peace and resisting arrest on May 3, 1982. It is undisputed that Grievant's job performance was satisfactory.

Grievant claims the discharge proceedings were brought, conducted, and upheld under the wrong standard of conduct. The lower tribunals based their decision, in part, on SDCL 23-3-35(3), which permits the law enforcement standards commission to decertify law enforcement officers convicted of a misdemeanor involving moral turpitude.[1] This statute reads, in part:

> In addition to powers conferred upon the commission elsewhere in this chapter, the commission shall have power to:
>
> . . . .
>
> (3) Certify persons as being qualified under the provisions of §§ 23-3-26 to 23-3-47, inclusive, to be law enforcement officers, and by rule to establish criteria and procedure for the revocation or suspension of the certification of officers who *are convicted of a* felony or *misdemeanor involving moral turpitude*, have intentionally falsified any application or document to achieve certification, or have been discharged from employment for cause. [Emphasis added]

Grievant contends that SDCL 23-3-35(3) was erroneously invoked. We agree. That statute is applied by the law enforcement standards commission. The commission was not involved in these grievance hearings or appeals. SDCL 23-3-35(3) relates to certification and decertification of law enforcement officers. Grievant was not an officer certified by the law enforcement standards commission. In view of the inapplicability of this statute as grounds for Grievant's discharge, we need not decide whether he is a law enforcement officer within the meaning of SDCL ch. 23-3, as that term is variously defined in different contexts.[2]

We find the applicable grounds for dismissal in SDCL ch. 3-6A and its promulgated regulations. The Career Service Act, SDCL ch. 3-6A, establishes a system of career service personnel management for the executive branch of state government. SDCL 3-6A-1. Pursuant to constitutional authority, S.D. Const. art. XIV, § 2, the legislature has placed the area of personnel management of the board of charities and corrections under the bureau of personnel of the career service commission. SDCL 3-6A-12. SDCL 3-6A-37 and SDCL 3-6A-38 grant to the commission the power and duty to act as a grievance review board for career service employees if a grievance remains unresolved after exhaustion of a departmental grievance procedure and the career service employee demands a hearing before the career service commission. The commission shall uphold the appointing authority's discharge decision upon finding that the discharge was "for good cause." SDCL 3-6A-38.1.

Pursuant to the rule-making authority granted by SDCL 3-6A-36, the career service commission has defined just causes for disciplinary action in A.R.S.D. 55:01:12:05.[3]

---

1. It is undisputed that the resisting arrest conviction was a misdemeanor involving moral turpitude for purposes of SDCL 23-3-35(3). *See* A.R.S.D. 2:01:02:09.

2. SDCL 22-1-2(20); SDCL 23-3-27; SDCL 23A-45-9(7).

3. *55:01:12:05. Causes for dismissal, demotion or suspension.* Just causes for disciplinary action are listed below but may be made for other just causes as reported to the commissioner:

(1) The employee has been convicted of a felony which renders him unfit to perform the duties of his position;

(2) The employee has willfully, wantonly, unreasonably, unnecessarily or through culpable negligence been guilty of brutality or cruelty to an inmate or prisoner of an institution, to a person in custody, or to other persons, provided the act committed was not necessarily or lawfully done in self-defense, or to protect the lives of others, or to prevent the escape of a person lawfully in custody;

This regulation enumerates sixteen just causes for disciplinary action. It is preceded by a catch-all provision that disciplinary action may be taken "for other just causes as reported to the commissioner."

■ Grievant contends that the alleged grounds for his dismissal are all off-duty related and are not among the litany of causes found in A.R.S.D. 55:01:12:05. He claims that the enumerated causes are all directly associated with work and that the canon of statutory construction known as ejusdem generis therefore prohibits the "other just causes" provision of A.R.S.D. 55:01:12:05 from encompassing his off-duty conduct. The ejusdem generis principle holds that where general words follow (or, as here, precede) the enumeration of particular classes of things, the general words will be construed as applying only to things of the same general kind as those enumerated. *Kelley v. Duling Enterprises, Inc.*, 84 S.D. 427, 172 N.W.2d 727 (1969); *State v. Fairbanks*, 65 S.D. 272, 273 N.W. 188 (1937), 111 A.L.R. 759; *See also Aberdeen Ed. Ass'n v. Aberdeen Bd. of Ed.*, 88 S.D. 127, 215 N.W.2d 837 (1974) (Wollman, J., concurring specially).

■ We do not read the listed causes as all being related only to work conduct. The third enumerated cause concerns violation of any of the provisions of the Career Service Act or the accompanying administrative regulations. Such provisions theoretically can prohibit activities which may have no direct nexus with work. The fifth enumerated cause likewise permits disciplinary action for violation of any department, division, bureau or institution regulation or order or for failure to obey any proper direction made and given by a supervisor. Such regulations or directives might be broad enough to address off-duty conduct. We therefore conclude as a matter of law that the "other just causes" provision of A.R.S.D. 55:01:12:05 can potentially involve off-duty conduct. We do not speculate what, if any, just causes might be found on remand.

■ Grievant also claims no prior warning of disciplinary action was given before the termination. A.R.S.D. 55:01:12:03.01 states that the "appointing authority *must* issue to a status employee a notice in writing that his performance is unsatisfactory" (emphasis added). As noted, however, Grievant's termination did not relate to job performance. *In Hartpence v. Youth Forestry Camp*, 325 N.W.2d 292 (S.D.1982), we stated that the thirty day notice must be given for inadequate job performance. We recognized, however, that only one of

(3) The employee has violated any of the provisions of the Career Service Act or this article;

(4) Repealed;

(5) The employee has violated any department, division, bureau or institution regulation or order or failed to obey any proper direction made and given by a supervisor;

(6) The employee is intoxicated while on duty;

(7) The employee has been guilty of insubordination to his supervisor or unduly disrupts the efficiency and morale of the department;

(8) The employee is incompetent or inefficient in the performance of the duties of his position;

(9) The employee is careless or negligent with the moneys or other property of the state;

(10) The employee has used, threatened to use, or attempted to use unreasonable personal influence or political influence in securing promotion, leave of absence, transfer, change of pay rate, or change in character of work;

(11) The employee has induced, or has attempted to induce, an officer or employee of the state to commit an unlawful act or to act in violation of any department, division, bureau or institution regulation or order;

(12) The employee has taken for his personal use, from any person, any fee, gift, or other valuable thing in the course of his work or in connection with it, when the gift or other valuable thing is given in the hope or expectation of receiving a favor or better treatment than that accorded other persons;

(13) The employee has engaged in outside business activities on government time or has used state property for those activities in violation of § 55:01:11:03;

(14) The employee has failed to maintain a satisfactory attendance record based upon the established working hours;

(15) The employee has made false statement of material fact in the application process;

(16) The employee has fraudulently used his sick leave.

An employee with status may appeal actions under this section according to chapter 55:01:13. The commissioner shall assure that the foregoing actions shall be uniformly administered.

the just causes for discipline enumerated in A.R.S.D. 55:01:12:05 concerns job performance. That cause was not alleged here. A.R.S.D. 55:01:12:04 permits the appointing authority to dismiss or suspend a status employee for cause at any time. Accordingly, a thirty day warning was not required.

The career service commission placed the burden of proof on Grievant instead of on the employer at the de novo hearing. The burden to show just cause for dismissal clearly rests with the employer and does not shift. *Hartpence*, 325 N.W.2d 292; *Thomas v. Thomas Truck and Caster Company*, 228 N.W.2d 52 (Iowa 1975); 53 Am.Jur.2d *Master & Servant* §§ 45, 67 (1970).

Reversed and remanded for a new hearing before the career service commission under the proper standards.

WOLLMAN and DUNN, JJ., concur.

MORGAN, J., concurs specially.

HENDERSON, J., dissents.

MORGAN, Justice (concurring specially).

I concur in the decision and I write specially only to suggest that there are some limitations on the "other just causes" referred to in the preamble to A.R.S.D. 55:01:12:05. Under this rule, the Career Service Commission has defined just causes for disciplinary action by the commissioner of the appointing authority. Grievant claims, on one hand, that all of the "just causes" delineated in A.R.S.D. 55:01:12:05 are duty related. The majority points, on the other hand, to two enumerated causes that may not be job related and thus refutes grievant's claim that under the doctrine of ejusdem generis, the "other just causes" mentioned generally in the preamble must likewise be job related. Even though an appointing authority could deem spitting on the sidewalk to be a "just cause" for termination, there may be protections built into other terminology in the rule.

First, A.R.S.D. 55:01:12:05 requires that "[t]he commissioner *shall* assure that the foregoing actions shall be uniformly administered." (Emphasis added.) This appears to place a considerably greater burden upon commissioners who preside over grievance hearings involving termination where the cause is not one of those enumerated in the rule.

Second, and perhaps more important in the context of this case, I would point out that where the Commission specifically enumerated under A.R.S.D. 55:01:12:05(1) that "... convicted of a *felony* which renders [employee] unfit to perform the duties of his position" (emphasis added) is cause for termination, any attempt to extend this to lesser offenses would clearly violate the doctrine of expressio unius est exclusio alterius, the expression of one thing is the exclusion of a different thing. If the Commission wants to extend the grounds to other offenses, even those involving moral turpitude, it has the prerogative to do so under the rulemaking procedures. It is not for the appointing authority, nor the commissioner, nor certainly for this court to extend that provision any further than as specifically enumerated.

HENDERSON, Justice (dissenting).

An assistant attorney general, the hearing officer herein, placed the burden of proof upon the grievant to establish that he was wrongfully discharged. In effect, the warden of the South Dakota State Penitentiary was acting as the employer and discharged his employee, a correctional officer, and the burden of proof rests upon the employer to justify the dismissal and to prove up the reasons for the discharge. *Hartpence v. Youth Forestry Camp*, 325 N.W.2d 292 (S.D.1982). Therefore, for this reason alone, ordinarily, a reversal for a new de novo hearing where the proper burden of proof is utilized would be in order. However, it appears from the record that notwithstanding this statement by the hearing officer, the burden of proof was assumed by the Career Service Commission which offered its case and went forward with the evidence and testimony as to the reasons for the termination of grievant. Grievant was required to refute the

justification for termination and did so, through himself and other witnesses. Thus, although the wrong burden of proof was expressed, the correct burden of proof was employed.

The majority opinion would reverse, in effect, Warden Solem, the State Penitentiary Disciplinary Board, the hearing officer, the South Dakota Board of Charities and Corrections, the Career Service Commission, and the Circuit Court of the Second Judicial Circuit, Minnehaha County, South Dakota, upon the basis that the grievant was ostensibly discharged under an isolated wrong standard of conduct. As I read the Findings of Fact and Conclusions of Law of the Career Service Commission, they are clearly supported by evidence that disciplinary action was taken against this correctional officer for a good cause. The circuit court entered a memorandum decision on August 3, 1983, and an order on August 11, 1983, sustaining the termination of the grievant by virtue of having considered all of the evidence and testimony in the record of the proceedings.

Having reviewed the Findings of Fact and Conclusions of Law entered upon sworn testimony and exhibits by the Career Service Commission, I could not hold that the decision of the Career Service Commission was clearly erroneous, arbitrary or capricious; nor could I hold that said decision was characterized by an abusive or clearly unwarranted exercise of discretion or an error in law.

There is no doubt that the grievant, as a Correctional Officer II, was a career service employee. His position required that he maintain order in the penitentiary, supervise and transport prisoners incarcerated in the penitentiary, and to take orders from and maintain a proper attitude toward his superior officers and fellow correctional officers. After each of the incidents as set forth in the majority opinion, the grievant was confronted by his supervisors who explained both the severity and potential ramifications (to include discharge) of such type of off-duty conduct. This is supported by the record. On each occasion, it appears that the grievant took exception to the official reports of the incidents. No

sorrow or regret was manifested. The transcript bears out that there was some type of counseling between the grievant and his immediate supervisor, Officer Hagen. This was characterized by Officer Hagen as "directive counseling" and that he and the grievant had "an understanding—I felt there was a definite understanding that incidents like this are unacceptable behavior." With reference to the "hit and run accident" on July 3, 1980, counseling took place between Officer Hagen and grievant as the vehicle which was struck belonged to a fellow officer, Sergeant Berg. Grievant told Officer Hagen that he "was going to take care of it." A May 19, 1982 report on grievant relates that it was on July 30, 1980, that the grievant left the scene of an accident and abandoned his vehicle. In addition to the hit and run accident, it was apparently discovered that grievant had illegally changed the license plates from another vehicle. According to this report, the grievant made no effort to pay his fellow officer for damages to his vehicle and a judgment was obtained against grievant in December of 1980 for over $500, but as of May 19, 1982, no payments were made upon the judgment. Grievant, according to his brief, now says that he paid off this judgment in full "after he was terminated from his employment." It was after the May 3, 1982 incident that a disciplinary hearing was held on May 18, 1982, and at this time grievant's entire record was reviewed and four fellow officers, constituting the State Penitentiary Disciplinary Board, decided that grievant could no longer be retained and he was so informed.

SDCL 3–6A–38.1 provides, among other things, that "the career service commission shall determine and decide whether the discharge, suspension, or demotion was made for *good cause*." (Emphasis supplied.) Note that it does not say "just cause" as reflected by ARSD 55:01:12:05. Said statute goes on to state: "If the commission finds that the discharge, suspension, or demotion was made for *good cause*, it shall enter an order upholding the decision of the appointing authority discharging, sus-

pending, or demoting the employee." (Emphasis supplied.) The South Dakota Career Service Commission formally decided that the discharge was for "good cause." One of the important Findings of Fact, number 7, expressed:

Grievant O'Neill was well informed and advised by his superiors that his refusal to alter, modify or change his pattern of behavior, performance and conduct, both on and *off the job,* would put his position in jeopardy and that he was well advised and informed of that fact prior to the incident of May 3, 1982, which was the cumulative act that led to his termination. (Emphasis supplied mine.)

The special concurrence concerns itself with uniform treatment in futuro, apparently triggered by a new setting created via the majority's position. Finding of Fact number 8 provides:

Grievant O'Neill was disciplined consistently with other correctional officers who were employed by the South Dakota State Penitentiary prior to the time of his employment. The Penitentiary staff was not guilty of any discriminatory act in its treatment and discipline of Grievant O'Neill, in that the action taken by the administrative staff was consistent with action applied and administered to other correctional officers for like or similar violations of conduct and failure to perform the standards and accepted conditions of employment of the South Dakota State Penitentiary.

Thus, there can be no doubt, unless this Court puts on a fact-finding suit, that grievant O'Neill was not beset upon for idle or biased reasons. He was disciplined and terminated for "good cause" because he did not measure up to the conditions of employment as a correctional officer. Conclusion of Law number 3 reflects that O'Neill undertook "a course of conduct which is contrary to that prescribed by the rules and regulations of the South Dakota State Penitentiary and as required by law officers under the laws of the State of South Dakota." This Court, as well as the trial court, "shall give great weight to the findings made and inferences drawn by an agency on questions of fact." SDCL 1–26–36. "A ruling or decision of an administrative agency is upheld unless the decision is clearly erroneous in light of its entire record ...." *Application of Leo's Bus Serv., Inc.,* 342 N.W.2d 228, 230 (S.D.1984). *See also, Application of Southern Hills Bank of Edgemont,* 339 N.W.2d 310 (S.D. 1983); *Matter of Ackerson, Karlen & Schmitt,* 335 N.W.2d 342 (S.D.1983).

*In Appeal of Miller,* 283 N.W.2d 241 (S.D.1979), we admonished that the Personnel Service Board should not interfere with managerial decisions entrusted to those in positions of responsibility who must insure that employees of a department should perform their duties with skill and competence and that citizens of this state are entitled to expect professional skill and competence. We expressed:

We cannot believe that the legislature intended that the Career Services Act be interpreted and administered in a manner that would have the effect of immunizing employees covered by the provisions of the Act from good faith managerial decisions, based upon good cause, designed to promote the efficient operation of the executive branch of state government.

*Miller,* 283 N.W.2d at 243. Specifically, this grievant occupied a position to correct inmates and to take orders from his superiors. Yet, in the City of Sioux Falls, he set about violating the local ordinances on numerous occasions to the detriment not only of the citizenry at large but one of his fellow officers. The warden is not only responsible for the inmates but the officers who correct the inmates. Necessarily, the warden must require the type of conduct and standard of behavior, both on and off duty, for the efficient and effective administration of the South Dakota State Penitentiary. This warden, and all governmental subdivisions thereafter, acted pursuant to law in exercising their statutory duties to administer the law fairly. The grievant violated directions given to him by his supervisor under ARSD 55:01:12:05(5). Whether denominated a "just cause" or "good cause" under SDCL 3–6A–38.1, the Commission properly upheld the decision of

the State Penitentiary Disciplinary Board and its warden in discharging the grievant. Therefore, I respectfully dissent.