SIOUX FALLS SCHOOL DISTRICT,
Plaintiff and Appellee,

v.

Renee KOUPAL, Defendant
and Appellant.

No. 18670.

Supreme Court of South Dakota.

Argued Sept. 12, 1994.

Decided Dec. 21, 1994.

Rehearing Denied Jan. 25, 1995.

Michael L. Luce of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for plaintiff and appellee.

John A. Hamilton of SD Advocacy Services, Pierre, Mark Partin of Advocacy, Inc., Austin, TX, for defendant and appellant.

KONENKAMP, Justice.

An autistic child's mother appeals the circuit court's judgment rejecting her challenge of a school district's refusal to include specific teacher training in her child's education plan. We affirm.

Six-year-old Brett Koupal suffers from severe autism. He receives special education from the Sioux Falls School District (School District), which includes instruction through the TEACCH method, a program developed at the University of North Carolina specifically designed for autistic children. TEACCH stands for "Treatment and Education of Autistic and related Communication, handicapped CHildren." When Brett's IEP (Individualized Education Program) was

prepared in both 1991 and 1992, Brett's mother, Renee Koupal, attached to the IEPs several typed pages designated as "Other Related Services" which included the following statement:

> Due to the complex nature of Autism, and the extensive expertise that is needed to appropriately teach these children, it is of critical importance that those who are working with Brett receive sufficient autism-specific training. Therefore, Brett's classroom teacher will have received, at the very least, the five-day TEACCH training course prior to working with him.

The School District took no issue with these additions.

Dr. Tom Stanage, director of the autism program at the University of South Dakota, conducts South Dakota's only five-day TEACCH course. Attendance is limited to twenty-five people and the course is held only twice a year: once in Rapid City and once in Sioux Falls, both sessions in June. Dr. Stanage believes a teacher could become sufficiently trained to use the TEACCH system by means other than the five-day workshop, though such alternatives are less preferred.

Both the School District and the mother agree that Brett's teachers have always been competent in the TEACCH method. The mother's concerns were aroused, however, when in May of 1992 she learned that Brett's summer teacher had not taken the five-day TEACCH course. The mother considered the course mandatory for Brett's teachers, in accord with her attachment to the IEP. She complained to Karen Roth, the School District's Director of Exceptional Children's Services. Although Roth later classified the mother's attached pages as non-binding "suggestions" which the District would attempt to follow, the School District responded by arranging for the teacher, Sandy Ragels, to attend the course. She could only attend the class four of the five days, due to conflicts in her schedule. To make up for the missed training day, the School District paid two special education teachers, trained and experienced in the TEACCH method, to work with Ragels for ten hours.

When School District officials met with Brett's mother on December 11, 1992 to review his IEP, the School District announced its intent to exclude from Brett's IEP language specifically requiring the five-day TEACCH course for his teachers. The School District assured the mother that Brett will continue TEACCH method instruction, but the mother feared that teachers trained with anything less than the full five-day TEACCH course would cause Brett to regress. The mother initiated a due process hearing pursuant to 20 U.S.C. § 1415(b)(1)(E).

A hearing examiner heard evidence on March 26, 1993 and entered findings of fact and conclusions of law, deciding that teacher training could be included in an IEP and that it was inappropriate for the School District to remove the five-day course requirement from Brett's current IEP. The School District appealed, and, on independent review, the circuit court reversed. The mother raises the following issues on appeal:

I. Did the circuit court err in holding that specific teacher training could not be mandated in Brett's IEP?

II. Did the trial court err in finding immaterial the teacher training language in Brett's two previous IEPs?

III. Is the mother entitled to attorney's fees?

## ANALYSIS

The Individuals with Disabilities Education Act (IDEA), formerly known as the Education of the Handicapped Act, 20 U.S.C. § 1400 *et seq.*, provides federal funding to assist state and local agencies in educating disabled children. Brett clearly qualifies under the Act: Autistic disorder is a lifelong neurologically-based developmental disability characterized by communication dysfunction and other profound impairments. IDEA requires "that all children with disabilities have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, to assure that the rights of children with disabilities and their parents or guardians are protected...." 20 U.S.C. § 1400(c). The United States Supreme

Court defined "free appropriate public education" in *Hendrick Hudson, Dist. Bd. of Ed. v. Rowley*, 458 U.S. 176, 200–01, 102 S.Ct. 3034, 3048, 73 L.Ed.2d 690 (1982):

> Implicit in the congressional purpose of providing access to a "free appropriate public education" is the requirement that the education to which access is provided be sufficient to confer some educational benefit upon the handicapped child.... We therefore conclude that the "basic floor of opportunity" provided by the Act consists of access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child.

A disabled child's unique education needs must be tailored by means of an IEP. 20 U.S.C. § 1400(c). An IEP is a written statement for each disabled child which details the child's present educational performance level, the annual goals and short term objectives, specific educational services to be provided, duration of services, and the criteria for measuring and evaluating the objectives. 20 U.S.C. § 1401(a)(20). An IEP is developed by a school representative qualified in special education, the child's teacher, the parents or guardian, and, if appropriate, the child. 20 U.S.C. § 1400(c), 1401(a)(19), 1412(7), 1415(b)(1)(A), (C), (E), and 1415(b)(2); 34 C.F.R. § 300.345.

 To present complaints about an IEP, IDEA gives a disabled child's parents the right to initiate an "impartial due process hearing" before a hearing examiner and further gives either side the right to appeal the hearing examiner's decision to state or federal court. 20 U.S.C. §§ 1415(b)(1)(E), 1415(e)(2). *Rowley* imposes a two-part test to evaluate challenges to an IEP: (1) Has the school administration complied with IDEA's procedures; and (2) is the IEP reasonably calculated to enable the child to receive educational benefits? 458 U.S. at 206–07, 102 S.Ct. at 3051. Cognizant of IDEA's moderate goal to provide appropriate, not optimal, special education (*Rowley*, 458 U.S. at 198, 102 S.Ct. at 3046–47), courts may not substitute their "notions of sound educational policy for those of the school authorities." 458 U.S. at 206, 102 S.Ct. at 3051. In reviewing a hearing examiner's decision, the trial court must, while according the hearing examiner's decision "due weight," independently decide based on a preponderance of the evidence, whether the school administration has satisfied IDEA's requirements. 20 U.S.C. 1415(e)(2); *Rowley*, 458 U.S. at 206, 102 S.Ct. at 3051; *Petersen v. Hastings Public Schools*, 31 F.3d 705 (8th Cir.1994); *Lachman v. Illinois State Bd. Educ.*, 852 F.2d 290, 293 (7th Cir.1988), *cert. denied*, 488 U.S. 925, 109 S.Ct. 308, 102 L.Ed.2d 327 (1988). The standard of review at the trial court level "requires a more critical appraisal of the agency determination than clear-error review entails, but which, nevertheless, falls well short of complete *de novo* review." *Lenn v. Portland School Committee*, 998 F.2d 1083, 1086 (1st Cir.1993). In an IDEA appeal, a trial court may, under certain circumstances, hear additional evidence. 20 U.S.C. § 1415(e)(2). So the independent review is "one of involved oversight" subject to the judge's "exercise of informed discretion." *Lenn*, 998 F.2d at 1087; *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983 (1st Cir.1990), *cert. denied*, 499 U.S. 912, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991).

 The trial court determined that the School District complied with IDEA and that the proposed IEP was reasonably calculated to enable Brett to receive educational benefits. At the appellate level our review is limited to the clearly erroneous standard for the trial court's factual findings. *Wolff v. Royal Ins. Co. of America*, 472 N.W.2d 233 (S.D.1991); *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455, 459 (S.D.1970). The court's legal conclusions are fully reviewable. *Kayser v. State Elec. Comm'n*, 512 N.W.2d 746, 747 (S.D.1994); *Reid v. Huron Bd. of Educ.*, 449 N.W.2d 240, 242 (S.D.1989). The decision will stand unless we are definitely and firmly convinced a mistake has been made. *Selle v. Pierce*, 494 N.W.2d 634, 636 (S.D.1993); *Permann v. Dept. of Labor*, 411 N.W.2d 113 (S.D.1987).

## I: DID THE CIRCUIT COURT ERR IN HOLDING THAT SPECIFIC TEACHER TRAINING COULD NOT BE MANDATED IN BRETT'S IEP?

Both the mother and the School District agree that TEACCH is an appropriate and

necessary method for teachers working with Brett. The School District favors an IEP requiring that the TEACCH method be used, but it opposes language in the IEP mandating that instructors specifically receive the five-day course. The mother reasons that unless Brett's IEP contains specific language requiring his teachers to take the five-day TEACCH training course, there is no other way to objectively measure teacher competency in the TEACCH method.

■ When the mother added her "Other Related Services" document to Brett's IEP, she sought to invoke federal law requiring support services for disabled children. IDEA's provision of a "free appropriate public education" is satisfied when the instruction is given "with sufficient support services to permit the child to benefit educationally." *Rowley*, 458 U.S. at 203, 102 S.Ct. at 3049. Indeed, an IEP must include all services necessary to meet the child's identified special education and related service needs. 34 C.F.R. § 300 *et seq.* These services are defined as:

> transportation and such developmental, corrective, and other supportive services (including speech pathology and audiology, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, counseling services, including rehabilitation counseling, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as are required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children.

20 U.S.C. § 1401(a)(17); see also 34 C.F.R. § 300.16(a). This list is "not exhaustive and may include other developmental, corrective, or supportive services...." 34 C.F.R. § 300.16, note. South Dakota's implementing regulations further define "related services" in ARSD 24:05:13:01(16):

> services that support the provision of special education, including transportation and those developmental, corrective, and other supportive services determined by a local placement committee to be required for an

eligible child to benefit from special education.

■ The trial court found that these definitions do not include teacher training as a service. We concur. Under the time honored canon of *ejusdem generis,* where general words in a statute accompany the enumeration of particular classes of things, the general words will be construed as applying only to things of the same general kind as those enumerated. *Grievance of O'Neill,* 347 N.W.2d 887 (S.D.1984); *Kelley v. Duling Enterprises, Inc.,* 84 S.D. 427, 172 N.W.2d 727 (1969); *State v. Fairbanks,* 65 S.D. 272, 273 N.W. 188, 111 A.L.R. 759 (1937); *See also Aberdeen Ed. Ass'n v. Aberdeen Bd. of Ed.,* 88 S.D. 127, 215 N.W.2d 837, 843 (1974) (Wollman, J., concurring specially). Although these definitions may not be all inclusive, the scope of the listed services clearly fails to encompass specific teacher training.

■ Inasmuch as teacher training is not a related service under federal law, it cannot be required in an IEP. Brett's mother certainly maintains a genuine concern: Inadequately trained teachers may deprive her disabled son of a chance for maximum progress. We must nonetheless observe that although providing capable teachers may be implicit in IDEA, Congress left teacher competency in the control of school administrators. *Cf. Lachman v. Illinois State Bd. of Educ.,* 852 F.2d 290, 297 (7th Cir.1988). A parent, no matter how well-intentioned, cannot dictate to a school district, as part of her disabled child's IEP, how teachers will be trained or how their competency will be measured.

## II: DID THE TRIAL COURT ERR IN FINDING IMMATERIAL THE TEACHER TRAINING LANGUAGE IN BRETT'S TWO PREVIOUS IEPs?

■ The School District officials believed the mother's attachments were not part of the IEP. The hearing examiner recognized some confusion on whether the mother's attached pages constituted part of Brett's IEP. He held, nevertheless, that the School District was estopped from arguing that the mandatory teacher training lan-

guage was not part of Brett's official IEP, because it was attached to his 1991 and 1992 IEPs and the School District never objected to the language, nor did it inform the mother that it did not consider the attachments part of the formal IEP. So the question here is, can a school district be required to provide items in an IEP, because it acceded to them in the past, even though the law does not require them to be provided? The trial court deemed the contents of the prior IEPs irrelevant to determining what should be included in his present IEP. We agree. We can find no requirement in IDEA which binds school authorities or parents indefinitely to the terms of an IEP. On the contrary, each disabled child's IEP must be reviewed periodically, not less than annually, and, if appropriate, revised. 34 C.F.R. § 300.343(d); ARSD 24:05:27:08. If parents and school administrators cannot agree on what is appropriate, a due process hearing is available. At the hearing the critical issue is whether the proposed IEP is "appropriate for a particular child at a given point in time." *Burlington v. Department of Educ.*, 736 F.2d 773, 778 (1st Cir.1984), *aff'd*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). The circuit court held that the proposed IEP requiring TEACCH methodology for Brett, but not mandating specific teacher training, complied with IDEA in that it was reasonably calculated to enable Brett to receive educational benefits. This is all IDEA requires and we can require no more. *Rowley*, 458 U.S. at 206–07, 102 S.Ct. at 3051.

## III: IS THE MOTHER ENTITLED TO ATTORNEY'S FEES?

IDEA provides:

> In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorney's fees as part of the costs to the parents or guardian or a handicapped child or youth who is the prevailing party.

20 U.S.C. § 1415(e)(4)(B). The mother has not prevailed in this appeal, so she is not entitled to attorney's fees.

Affirmed.

MILLER, C.J., SABERS and AMUNDSON, JJ., and CALDWELL, Circuit Judge, concur.

CALDWELL, Circuit Judge, sitting for WUEST, J., disqualified.